J. Patrick **KITTLER,** et al., Appellants,

v.

**ECKBERG, LAMMERS, BRIGGS, WOLFF & VIERLING,** et al., **Jon Pederson, Respondents.**

No. C8–95–462.

Court of Appeals of Minnesota.

Aug. 8, 1995.

Review Denied Oct. 10, 1995.

Reconsideration on Denial of Rehearing Oct. 25, 1995.

Richard A. Williams, Jr., Hvass, Weisman & King Chartered, Minneapolis, for J. Patrick Kittler, et al.

Richard J. Thomas, Bryon G. Ascheman, Geraghty, O'Loughlin & Kenney, P.A., St. Paul, for Eckberg, Lammers, Briggs, Wolff & Vierling, et al.

Terrence J. Fleming, Jonathan Saffold, Jr., Lindquist & Vennum, P.L.L.P., Minneapolis, for Jon Pederson.

Considered and decided by NORTON, P.J., and HUSPENI and SCHULTZ,* JJ.

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by ap-

## OPINION

HUSPENI, Judge.

Statements in a letter sent out by an attorney to solicit additional plaintiffs for his client's potential lawsuit against appellants were allegedly defamatory. The district court awarded summary judgment to respondents (the attorney, his law firm and the client), on the grounds that the statements were protected under the judicial action privilege. Because the letter was a communication preliminary to a judicial proceeding proposed in good faith, we hold that the privilege applies and affirm the summary judgment.

## FACTS

Respondent Kevin K. Shoeberg, an employee of respondent law firm Eckberg, Lammers, Briggs, Wolff & Vierling, was contacted by respondent Jon Pederson in regard to the possibility of the former shareholders of the Ronde Corporation bringing an action against the corporation's officers and directors, appellants J. Patrick Kittler and his wife, Linda Alt Kittler. Shoeberg then sent 56 former shareholders a letter beginning:

> I am writing this letter at the request of various former shareholders of the Ronde Corporation and First Merchants Corporation. I have been contacted by Jon Pederson regarding the possibility of bringing an action against Pat Kittler and his wife for, among other things, theft of corporate property, fraud and misrepresentation, and breach of fiduciary duty as an officer. We have only done a preliminary investigation.

The letter also said that the firm would need a $10,000 retainer fee before undertaking representation of the shareholders.

The Kittlers then brought a defamation action against Pederson, Shoeberg, and the law firm, alleging that the letter contained defamatory statements. Respondents moved for summary judgment, contending that the record established that the statements were made in good faith contemplation of litigation and were therefore protected by an absolute,

pointment pursuant to Minn. Const. art. VI, § 10.

or in the alternative a qualified, judicial action privilege.

The district court concluded that respondents had seriously contemplated litigation against appellants, that the statements made in connection with that proposed litigation were protected by an absolute privilege, and that public policy favored summary judgment; the district court declined to address the issue of qualified privilege. In a memorandum accompanying the denial of summary judgment, the district court observed that in their letter respondents did not claim their investigation had been sufficient for the purposes of bring a lawsuit; they said they had conducted only preliminary investigation and would need a retainer fee before beginning a lawsuit. The court also noted that "the letter was clearly a solicitation for additional clients."

On appeal, appellants argue that because the letter solicited new clients, its contents were not protected by the judicial action privilege.

### ISSUE

■■■■ Does the judicial action privilege protect a communication made preliminary to a proposed judicial proceeding if that communication solicits additional plaintiffs? [1]

### ANALYSIS

On an appeal from summary judgment, we ask two questions: (1) whether there are any genuine issues of material fact and (2) whether the lower courts erred in their application of the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). "[W]hether a [defamatory] communication is privileged is a question of law for the court to decide." *Lewis v. Equitable Life Assurance Soc'y,* 389 N.W.2d 876, 890 (Minn.1986). A reviewing court is not bound by and need not give deference to a trial court's decision on a purely legal issue. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn. 1984). Therefore, we review de novo the district court's determination that the letter was privileged.

In awarding summary judgment to respondents, the district court relied on Restatement (Second) of Torts, § 586 (1977), adopted as the law of Minnesota in *Matthis v. Kennedy,* 243 Minn. 219, 228, 67 N.W.2d 413, 419 (1954):

> An attorney at law is absolutely privileged to publish false and defamatory matter of another in communications preliminary to a proposed judicial proceeding, * * * if it has some relation thereto.[2]

The phrase "preliminary to a proposed judicial proceeding" is interpreted in comment e to section 586 in Restatement (Second) of Torts:

> As to communications preliminary to a proposed judicial proceeding the rule stated in this Section applies only when the communication has some relation to a proceeding that is contemplated in good faith and under serious consideration. The bare possibility that the proceeding might be instituted is not to be used as a cloak to provide immunity for defamation when the possibility is not seriously considered.

Summary judgment was granted on the basis that respondents intended to sue appellants, that the letter was related to a lawsuit contemplated in good faith, and that its contents were therefore absolutely privileged.

Appellants argue that they are entitled to bring an action for defamation because respondents' letter was a letter of solicitation allegedly containing false or misleading statements about appellants and letters of solicitation are not protected by the judicial action privilege.[3]

---

1. Because we conclude that an absolute privilege applies, we do not address the issue of qualified privilege.

2. The language has been updated in Restatement (Second) of Torts (1977), where section 586 reads:

   An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding * * * if it has some relations to the proceeding.

3. Although appellants had not raised their "solicitation" argument when opposing respondents' motion for summary judgment, the district court noted in its memorandum that "the letter was clearly a solicitation for additional clients."

■ Attorneys' letters of solicitation are protected as commercial free speech pursuant to *In re Appert & Pyle*, 315 N.W.2d 204 (Minn.1981). *Appert* cites *Bates v. State Bar of Arizona*, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977), which held that a prohibition on lawyer advertising was unconstitutional.

> Our application to this case of the *Bates* analysis that considers the state interests being served by the disciplinary rules prohibiting advertising and the combined interests of [attorneys'] right to free speech and the public's right to receive commercial information requires that we conclude [attorneys'] conduct in distributing written [advertising] materials was constitutionally protected.

*Appert*, 315 N.W.2d at 209. *Appert* also cites *Bates* for the proposition that false, deceptive or misleading information is not protected speech. *Id.* at 208.

■ Appellants argue that because respondents' letter was a solicitation, protected as commercial free speech only if it is truthful, it cannot also be a "communication preliminary to a proposed judicial proceeding," absolutely protected whether it is truthful or not. Respondents do not deny that the letter was a solicitation, but argue that it was also protected as preliminary to a proposed judicial proceeding. We agree.

Appellants offer no support for their view that a letter soliciting potential plaintiffs and a communication preliminary to a proposed judicial proceeding are mutually exclusive. While Minnesota courts have not addressed this question, the California Supreme Court recently did so in *Rubin v. Green*, 4 Cal.4th 1187, 17 Cal.Rptr.2d 828, 847 P.2d 1044 (1993). The plaintiff in *Rubin* was a mobile home park owner who alleged that an attorney had wrongfully solicited residents of the park in an effort to bring an action against the owner regarding park conditions, thus interfering with the contractual relationship between owner and residents. The California Supreme Court, in reversing the California Court of Appeals and reinstating the trial

While mindful of the prohibition against reviewing matters not presented to and considered by a district court, *Thiele v. Stich*, 425 N.W.2d 580,

court's dismissal of plaintiff's complaint, stated:

> We granted review in this case to consider whether a defendant in an impending civil action may sue the attorneys ·for the opposing party on the ground that they wrongfully "solicited" the litigation against him. We conclude that this proceeding not only undermines the established policy of allowing access to the courts, but that, given the availability of other remedies for the redress of attorney solicitation, this retaliatory suit is not maintainable.

*Id.* at 829, 847 P.2d at 1045. *Rubin* specifically rejects the argument that the "communicative" nature of the law firm's acts in soliciting clients was secondary to the solicitation nature, and therefore not protected.

> [W]e can imagine few communicative acts more clearly within the scope of the privilege than those alleged in the amended complaint, that is, meeting and discussing with [potential plaintiffs] * * * the merits of the proposed * * * lawsuit.

*Id.* at 832, 847 P.2d at 1048. We find the rationale of the California Supreme Court persuasive and conclude that respondents' letter in this case is also within the scope of the judicial action privilege. In bringing the letter within the scope, we also determine, as did the district court, that the letter was a communication related to a judicial proceeding that was contemplated in good faith and under serious consideration. Restatement (Second) of Torts, § 586, comment e.

We recognize that there are differences between *Rubin* and this case, but those differences do not compel a contrary result here. *Rubin* was an action for violation of the statute governing attorney solicitation, not a defamation action. The complaints in both, however, alleged similar harm from the attorneys' activities:

> The complaint alleged that * * * the law firm had "embarked on a malicious effort to harm [Rubin's] economic and business standing by stirring up animosity among [potential plaintiffs,] utilizing fear, intimi-

582 (Minn.1988), we address this issue because the district court obviously did so, even though it was not presented by the parties.

dation and coercion against [them], and communicating the false promise of frivolous litigation as a means to profit unjustly at [Rubin's] expense."

*Id.* at 830, 847 P.2d at 1046. The complaint in this case alleged that the letter contained false and defamatory statements which damaged the appellants' reputations. Both *Rubin* and this case involve actions brought by potential defendants who alleged harm from an initial step in the litigation process: contacting all potential plaintiffs. The court in *Rubin* faced the same issue we face here: "whether a defendant in an impending civil action may sue the attorneys for the opposing party on the ground that they wrongfully 'solicited' the action against him." *Id.* at 829, 847 P.2d at 1045. The fact that *Rubin* alleged damage from solicitation while appellants here allege damage from defamation is not a meaningful distinction.

Appellants argue here, as they did before the district court, that a material fact issue exists, thus precluding summary judgment. Appellants cite the lack of evidence in the record to support the truth of respondents' allegations of appellants' dishonesty, argue that no reasonable trier of fact could conclude that respondents' statements in the letter were true, and claim that in a trial on the underlying action, appellants would be entitled to summary judgment.

Appellants' arguments are meritless. There are no material fact issues in this case. It was the actions of appellants themselves that "froze" the record at the stage we now receive it. By bringing an action against respondents, appellants effectively prevented respondents from going forward with any potential lawsuit against appellants. Appellants' actions created a conflict of interest between Pederson and his attorneys, and placed those attorneys in an untenable position. They could neither go forward with the underlying action, thus demonstrating that the communication was in fact made preliminary to a judicial proceeding, nor could they defend themselves in this action without violating the attorney-client privilege.

Finally, we note the existence of significant public policy arguments favoring extension of the judicial privilege to acts which both solicit and communicate. As observed by the court in *Rubin:*

> Undergirding the immunity conferred by [the judicial privilege] is the broadly applicable policy of assuring litigants the utmost freedom of access to the courts * * * without fear of being harassed subsequently by derivative tort actions.

*Id.* at 831, 847 P.2d at 1047 (quotations and citations omitted). The *Rubin* court, however, was not insensitive to the growing concern with the large volume of litigation filed in the courts in recent years. While the *Rubin* court spoke in the context of controls on malicious prosecution suits, we find its analysis equally applicable in this case:

> [T]he better means of addressing the problem of unjustified litigation is through the adoption of measures facilitating the speedy resolution of the initial lawsuit and authorizing the imposition of sanctions for frivolous or delaying conduct within that first action itself, rather than through an expansion of the opportunities for initiating one or more additional rounds of malicious prosecution litigation after the first action has been concluded.

*Id.* at 834, 847 P.2d at 1050 (quotation omitted).

Finally, we concur fully in the observations of the district court in this case:

> [T]his action is not the proper vehicle to determine the merit or the lack thereof of [respondents'] claims against [appellants]. By bringing this action, [appellants] effectively obstructed the ability of [respondents] to have their claims against [appellants] heard by a Court of proper jurisdiction. This is exactly the result the judicial privilege was designed to prevent.

The district court was correct. Both the public policy concerns and the interests of these litigants can best be served by resolution of the underlying issues in a proceeding other than this defamation action.

## DECISION

The district court's decision that the absolute judicial action privilege applies to all communications made preliminary to proposed litigation contemplated in good faith is

in accord with both common law and public policy.

**Affirmed.**