Sidney BROWN, Appellant,

v.

Dennis COLLINS, Appellee.

Dennis COLLINS, Appellant,

v.

FIRST NATIONAL REALTY CORP.
et al., Appellees.

Nos. 21170, 21189.

United States Court of Appeals
District of Columbia Circuit.

Argued March 14, 1968.

Decided July 31, 1968.

Petition for Rehearing in No. 21,170
Denied Sept. 25, 1968.

Mr. Harvey Rosenberg, Silver Spring, Md., with whom Mr. Marvin E. Preis, was on the brief, for appellant in No. 21,170 and appellees in No. 21,189.

Mr. Arthur J. Hilland, Rockville, Md., with whom Mr. James E. Hogan, Rockville, Md., was on the brief, for appellee in No. 21,170 and appellant in No. 21,189.

Before BAZELON, Chief Judge, FAHY, Senior Circuit Judge, and LEVENTHAL, Circuit Judge.

LEVENTHAL, Circuit Judge.

These cross-appeals emanate from the action of plaintiff Collins against Brown and two corporations controlled by Brown, to recover damages caused by slander. Brown appeals the judgment, entered after jury verdict and reduction on remittitur, awarding substantial compensatory and punitive damages. He contends that his comments were absolutely or conditionally privileged, and he

complains as well of certain rulings during the trial. Collins appeals the trial judge's granting of directed verdicts in favor of the defendant corporations, arguing that Brown was their agent in making the slanders. We affirm.

Defendant Regional Construction Co. (Regional) hired United Cork Co. (United) as a subcontractor for some construction work at a building in the District of Columbia. After completion of its work, United submitted a bill to Regional which was not paid. To settle United's claim its area manager, Mr. Bonhach, located in Baltimore, then began negotiations with Brown, president of Regional and, with his wife, 98% stockholder. United also retained a Baltimore attorney, who in turn retained plaintiff Collins, a member of the District of Columbia bar, with whom he had dealt before.

Collins filed a mechanic's lien in Washington against the property on which United's work had been done. That lien did not mention the title holder of record of the property, but instead named as owners Regional, First National Realty Corp., another of Brown's corporations, and Brown personally. These were the equitable owners according to Collins, whose investigations indicated that the record title holder had conveyed his interest, although the transfer had not been recorded. The fact of the filing of the lien was picked up in credit reports on Brown and First National Realty, and allegedly affected Brown's efforts to obtain financing on other deals.

Angered both by the filing of the lien, and particularly by the filing of it against him personally, Brown telephoned Mr. Bonhach to protest vehemently. According to testimony which we must credit in light of the jury's verdict, Brown said over the telephone that: Collins was not concerned with settling the claim, but had filed the lien solely because of a grudge against Brown; Collins is antisemitic; Collins practices bigotry; Collins had on a prior occasion obtained a fraudulent judgment against Brown for $14,000; Collins should be sued for malpractice. Brown also threatened a defamation action against both Collins and United.

Mr. Bonhach meanwhile was taking notes, and he transmitted these allegations to the Baltimore attorney who had retained Collins. Not having the time to investigate the charges against Collins, that attorney dismissed Collins from the case. Collins lost out on the fee for collecting United's claim. Another attorney earned $6600. Also, Collins has not since then had any further business referred to him by this Baltimore attorney.

1. The trial court rejected Brown's contention that he was conditionally privileged to tell Mr. Bonhach of United that Collins was a bigoted and incompetent attorney. This ruling, it is urged, was erroneous. At trial, counsel argued to the trial judge both that Brown acted to protect Bonhach and United from Collins' incompetence and that Brown and Bonhach had a mutual interest in Collins' competence because Collins was acting on a matter of concern to both of them.

■ In some circumstances, there is a conditional privilege to warn another of matters threatening his interests. Whether such circumstances are present in an individual case is essentially a question of community consensus about the importance of disseminating the information if true as against the damage caused by transmittal of defamatory assertions that are erroneous, albeit made in good faith.[1]

■■ Three aspects of Brown's case combine, in our view, to show that he did not come within this privilege. First, Brown's communication was made to one whose interests he was not charged with protecting, either by family relationship or special friendship. Second, Brown's comments were volunteered. Absent a family or special relationship a conditional privilege is less likely to be accorded when the statement is volunteered

1. See generally, Harper, Privileged Defamation, 22 Va.L.Rev. 642 (1936).

than when made in reply to an inquiry—as for example a former employer's defamatory response to inquiries about a former employee. Third, there are Bar grievance committees especially established to consider complaints concerning conduct of attorneys, and they are charged with responsibility for protecting the public. This Brown knew, both because he is an attorney and because he had in the past made similar allegations concerning Collins to the cognizant committee. Where such an institution exists, there is little hospitality to the claim that moral duty mandates its circumvention.

■■ 2. Counsel also argued to the trial judge that defendant Brown is entitled to invoke the rule that persons who have shared interests are conditionally privileged to utter defamation on matters related to that interest. That is sound doctrine, and under this rubric are subsumed the numerous cases where members of a fraternal society, union, or business organizations are held conditionally privileged to discuss their common affairs.[2] The scope of that principle does not extend, however, to the situation of defendant Brown. Collins was in no way an employee of Brown's. Brown and Bonhach did not share a mutual concern with respect to the competence of Collins' work. There is not the common membership or similarity of position or ends that defines the core of this concept of conditional privilege.

■ 3. Without deciding the point we note that a strong claim of privilege could have been made had it been articulated in terms of a different mutual interest, namely the interest in settling United's claim against Regional. Persons whose ultimate interests are diametrically opposed may nonetheless share a mutual interest in minimizing their conflict and therefore may be conditionally privileged when they make defamatory statements *inter sese* to that end. We are not called upon to define the contours of such a privilege, for it is not available on the record made in this case. Such a theory of conditional privilege is inconsistent with the claim, successfully made at trial by Brown's counsel (in behalf of Regional) and still urged on appeal, that Brown was not acting as Regional's agent in making the telephone call. Analytically, any interest in settlement shared with United was an interest of Regional, the other party to the contractual dispute, and not with Brown. The underlying dispute with United was one that involved Regional, and it was Regional that would have been involved in any amicable resolution.

■ 4. Although the point was not raised at trial, Brown urges on appeal that his statements were "communications preliminary to a proposed judicial proceeding," and thus absolutely privileged under the Rule of Restatement of Torts, § 587,[3] which is widely accepted as stating the American rule that no defamation action may be grounded on a party's[4] statements preliminary to or in the course of a judicial proceeding so long as the defamatory matter "has some relation"—a standard broader than legal relevance—to the proceeding. Brown argues that the statements were either related to the "proceeding" commenced by the filing of the lien,[5] or else they were

2. Manbeck v. Ostrowski, 128 U.S.App. D.C. 1, 384 F.2d 970 (1967); Blake v. Trainer, 79 U.S.App.D.C. 360, 148 F.2d 10 (1945); Garey v. Jackson, 197 Mo.App. 217, 193 S.W. 920 (1917).

3. "A party to a private litigation * * * is absolutely privileged to publish false and defamatory matter of another in communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of a judicial proceeding in which he participates, if the matter has some relation thereto."

4. A similar immunity exists for counsel, witnesses, judge and jurors. *See generally*, Restatement of Torts, §§ 585–589. In this jurisdiction, see, e. g., Brown v. Shimabukuro, 73 App.D.C. 194, 118 F.2d 17 (1941); Young v. Young, 57 App.D.C. 157, 18 F.2d 807 (1927).

5. *Compare* Albertson v. Raboff, 46 Cal. 2d 375, 295 P.2d 405 (1956).

related to the defamation action he was threatening against Collins.

██ However, no claim of absolute privilege was made in the trial court. In civil litigation, matters not raised at trial ordinarily may not be raised on appeal. That principle of orderly administration is properly given effect in this case, without deciding whether, if timely raised, the claim of absolute privilege could have been supported. The requirement of timely assertion at trial of a claim of absolute privilege alerts opposing counsel and the trial judge, while the witnesses are at hand, to the need for careful preparation of, and attention to, the facts which establish or defeat the existence of the asserted privilege.[6] Where the record shows no reference to the legal claim, the facts must be unambiguous before an appellate determination cutting off or requiring retrial is proper.

No such clarity is present in this case. The doctrine of absolute immunity for statements in judicial proceedings reflects a judgment that the need for completely free speech for litigants is dominant, and that this freedom is not to be endangered by subjecting parties to the burden of defending their motives in subsequent slander litigation, or to the risk that juries may misapprehend those motives. Such special immunity is not lightly conferred, however, as it protects deliberate lies told with intent to destroy reputation. Where dealing with prelimi-

nary statements other than witness briefings,[7] settlement discussions[8] and the like, there is need for particularly close attention to the factual circumstances, recognizing that unlike statements made in court, these communications are not cabined by a litigant's recognition that contempt of court may follow if they are outrageously unnecessary and intemperate, even though more or less relevant.

██ The factual circumstances here are ambiguous. A statement to be privileged as a communication preliminary to a judicial proceeding must be made "in character" of a litigant.[9] Where, as with Brown—businessman, realtor, attorney—a person wears many hats in the course of a day, that question is substantial. Business conversations are not absolutely privileged merely because they deal with matters likely to end up in court in the future. Further, even if the telephone call be viewed as a communication preliminary to the proceedings started by the lien, Brown's claim that Collins was bigoted and motivated by spite were clearly not related to any possible proceedings concerning enforceability of the lien.[10] Although the Restatement standard of "relation" to the proceedings is broad, and does not require legal relevance, even that liberal standard is not met merely by showing that the defamatory comments were triggered by some pending lawsuit or the facts involved therein.[11] While parties

---

6. Whether statements have the necessary "relation" to the proceedings to be privileged is a question of law for the court. McKesson & Robbins, Inc. v. Newsome, 206 S.C. 269, 33 S.E.2d 585 (1945).

7. E.g. Watson v. M'Ewan [1905] A.C. 480.

8. E.g. Parker v. Title & Trust Co., 233 F. 2d 505 (9th Cir. 1956); Roberts v. Rothstein, 32 Misc.2d 643, 224 N.Y.S.2d 139 (1961); Zirn v. Cullom, 187 Misc. 241, 63 N.Y.S.2d 439 (1946).

9. Veeder, Absolute Immunity in Defamation: Judicial Proceedings, 9 Colum.L. Rev. 463, 490 (1909).

10. We note that subsequently a bill was filed to enforce the lien, although the proceedings were terminated by settle-

ment of the claim against Regional prior to hearing. No claim is made that the lien was ineffective as a means of reaching whatever interest Brown, First National and Regional had in the property. The sole claim is that Collins' prejudice may be inferred because by failing to name the record title holder, no protection was gotten by the lien against the record owner's conveyance of the property or against his payments to Regional. This departure from customary practice is sufficient, it is claimed, to support Brown's charges.

11. See, e. g., Stahl v. Kincade, 135 Ind. App. 699, 192 N.E.2d 493 (1963). We note that the overwhelming majority of the cases holding defamatory pleadings

and counsel obviously need freedom to confer before suit, there is a difference between this sort of conference to discuss matters contemplated as arising at trial, or in settlement before trial, and telephoned diatribes on tangential matters. Nor does the mere mention of the possibility of suing the communicant automatically convert the entire conversation to one "related" to a proposed judicial proceeding.

■ We are not disposed to render our judgment concerning the existence of absolute privilege *vel non,* in absence of a record that has been shaped in response to the claim. We affirm in 21170.[12]

■ 5. In No. 21189 plaintiff Collins appeals the judgment directed at the close of his case in favor of Brown's corporations, Regional and First National Realty.

Plaintiff's counsel did not mention the corporations in his opening statement to the jury, giving no indication he would press a theory that Brown had acted as their agent. Noting this, the trial judge called counsel to the bench and asked why the corporations had been joined, as they had been omitted from counsel's discussion. Counsel stated that plaintiff's theory was that Brown had acted in behalf of them, but he conceded "it's a very close question, Your Honor, and our evidence may not be sufficient to keep them in, but I would suggest that there is some evidence tending to show that they should be parties." The court then inquired why

counsel cared in any event, given Brown's full ownership of the corporation, and counsel replied that it would make the judgment easier to collect. Indicating that he thought the case against the corporations dubious, the judge nonetheless denied defendant's motion for a directed verdict on the basis of the opening statement, stating that although he liked to streamline a case, counsel could prove his case as he wished. To that counsel replied, "I don't expect to waste any of the court's time in this extraneous effort, if Your Honor please."

Counsel was as good as his word. In proving plaintiff's case, he did not address a single question to the relationship between Brown's statements and his corporations, even when examining Brown himself, whom he had called as an adverse witness. At the close of plaintiff's case, the trial court stated his intention to grant judgment in behalf of the corporations. Plaintiff made no objection or argument, saying merely, "I don't vehemently oppose that, Your Honor."

Defendant disclaimed that he was acting in behalf of the corporation, as we have noted in overriding one of the claims of privilege asserted for the defense. Plaintiff's contention to the contrary was so casual as to constitute, in the setting of this case, a waiver in substance of a point apparently regarded as extraneous and of little practical significance. We think remand for a new trial on this point is not in the interest of justice.

Affirmed.

privileged regardless of relevance deal with statements that were in fact relevant to the proceedings involved. See cases collected in 16 A.L.R. 746; 42 A.L.R. 878; 134 A.L.R. 483 and cases supplemental thereto.

12. Of Brown's objections to specific evidentiary rulings, the only question of substance is the admission at trial of Brown's letter to the Legal Ethics Committee of the D.C. Bar Association, charging Collins with improprieties in the suit in which Collins had won a $14,000 judg-

ment against Brown on behalf of his clients. The letter was admitted to show malice in the communications to Bonhach. On appeal, it is contended that such a letter is admissible for no purpose. At trial, however, the judge asked the basis for Brown's objection, and the reply was that no allegation had been made that the statements contained in the letter were part of the defamations on which this action was grounded. The trial judge therefore held that the letter was admissible to show malice, but not to establish the injury.