52 F.3d 321
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 KOOLVENT ALUMINUM PRODUCTS, INCORPORATED, a corporation,
Plaintiff-Appellant,
v.
AZRAEL, GANN & FRANZ, a Maryland partnership; Allen L.
Schwait, an individual; Miriam L. Azrael, an
individual, Defendants-Appellees.
 No. 94-1906.
 United States Court of Appeals, Fourth Circuit.
 Argued March 6, 1995.
Decided April 18, 1995.
 
 ARGUED: Joseph D. Shelby, Eckert, Seamans, Cherin & Mellott, Pittsburgh, PA, for appellant. Michael Alden Stover, Eccleston & Wolf, Baltimore, MD, for appellees. ON BRIEF: John J. Myers, Eckert, Seamans, Cherin & Mellott, Pittsburgh, PA, for appellant. Shirlie Norris Lake, Eccleston & Wolf, Baltimore, MD, for appellees.
 Before WILKINSON and WILKINS, Circuit Judges, and SPROUSE, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Koolvent Aluminum Products, Incorporated (Koolvent) appeals a decision of the district court granting summary judgment in favor of the Azrael, Gann & Franz law firm and two of its member attorneys, Allen L. Schwait and Miriam L. Azrael (collectively "the Azrael law firm"), in this defamation action. Koolvent contends that the district court erred in concluding that a letter the Azrael law firm sent to two of Koolvent's customers was not reasonably susceptible of a defamatory meaning. We agree and therefore reverse and remand for further proceedings.
 
 I.
 
 2
 In January 1994, the Azrael law firm brought an action on behalf of numerous consumers against Sears Roebuck & Co., a Sears authorized home improvement contractor, and several finance companies, alleging that they had engaged in a scheme to defraud customers of Sears who had purchased improvements to their homes (Sears litigation). See Woodard v. Sears Roebuck & Co., C/A No. 94-126 (D. Md. filed Jan. 19, 1994). The complaint alleged that while the customers had believed their home improvements were financed through unsecured loans, Sears and the contractor actually had obtained mortgages on the homes, which were then assigned to the finance companies. Koolvent was not a party to the Sears litigation.
 
 
 3
 While researching land records during the course of the Sears litigation, the Azrael law firm discovered that Koolvent, a home improvement contractor, was listed as the grantee on various mortgages that subsequently had been assigned to the finance companies named in the Sears litigation. Based primarily on this fact, the Azrael law firm sent letters to customers of Koolvent. The subject of this action is one of these letters, mailed to Billy Lee and Cathy Sue Scott and dated February 18, 1994, which was written on Azrael law firm stationery. The letter was signed by Schwait and Azrael, and read:
 
 
 4
 We are writing to you in reference to home improvements you may have purchased from Koolvent Aluminum Products, Inc. According to public Land Records, it appears that you entered into a contract with Koolvent on on[sic] or about 3/9/91 for the purchase price of approximately $ 19310.97, financed by NVR Savings Bank FSB or another finance company. The public land records reveals [sic] that Koolvent took a deed of trust or mortgage against your home, presumably in the course of financing your home improvement purchase.
 
 
 5
 This law firm represents other homeowners who purchased home improvements and did not know and were not told at the time they signed their home improvement contracts and financing documents that their contractors would be taking mortgages against their homes. These homeowners thought they were signing papers for unsecured loans, but found out later that the loan papers they signed were backdated, altered and/or falsely notarized out of their presence and resulted in mortgages against their homes that they did not--and would not have--agreed to.
 
 
 6
 We do not mean to suggest that you should be dissatisfied with your home improvement contractor or the work that was done for you if you are a satisfied customer.
 
 
 7
 However, if you did not know that Koolvent Aluminum Products, Inc. took a mortgage or deed of trust against your home in the course of your home improvement purchase OR if you did not know that you had the right to cancel your home improvement contract within three (3) days after it was signed, OR if you have any other problems with your contractor, you may wish to contact us to discuss your legal rights and whether your situation is similar to the experiences of our other homeowner clients.
 
 
 8
 There will be NO CHARGE for discussing these matters with us. If, after speaking with you and reviewing your transaction, we determine that your contractor or others may have have [sic] violated the law in their business transaction with you, you may be entitled to participate with other homeowners as a plaintiff in a class action lawsuit, similar to one that we filed in Federal Court in Baltimore on January 19, 1994 on behalf of other homeowners in similar transactions. In such an event, you may be entitled to cancellation of your mortgage or deed of trust. You also may be entitled to recover money damages. Under federal and state laws that permit recovery of attorneys' fees and costs from the parties who break the law, we would look to the wrongdoers to pay attorneys' fees and costs.
 
 
 9
 Please call or write to us at the telephone number and address listed at the end of this letter. If you have any questions about this letter, you may wish to take this letter to someone whom you trust and discuss it with that person before calling us.
 
 
 10
 We encourage you to give this letter your prompt attention, because your rights to obtain recovery may depend on your taking prompt action within time limits fixed by law.
 
 
 11
 We would be pleased to answer any questions you may have and look forward to hearing from you.
 
 
 12
 Koolvent then brought this defamation action against the Azrael law firm. The Azrael law firm moved to dismiss or alternatively for summary judgment, arguing that the letter was not reasonably susceptible of a defamatory meaning and that even if it were, the Azrael law firm was protected by an absolute attorney privilege. Koolvent responded that the letter was susceptible of being read to mean that Koolvent had defrauded some of its customers. And, Koolvent filed an affidavit pursuant to Federal Rule of Civil Procedure 56(f), claiming that further discovery was necessary on the issue of privilege.
 
 
 13
 The district court granted summary judgment to the Azrael law firm, concluding that the letter was not reasonably susceptible of a defamatory meaning. The district court analyzed the letter closely, explaining for example that the reference in the first sentence of the second paragraph to "other homeowners" who were represented by the Azrael law firm could not reasonably be read to refer to Koolvent customers because the sentence used the phrase "their contractors" rather than "your contractor" (i.e., Koolvent). Also, the district court emphasized that the third paragraph was a disclaimer. It did not reach the privilege claim or respond to Koolvent's suggestion that additional discovery was necessary, apparently because its ruling did not reach the privilege claim.
 
 II.
 
 14
 To recover for defamation, a "private individual" plaintiff must prove the following elements: (a) a defamatory communication to a third party; (b) falsity; (c) fault amounting at least to negligence on the part of the publisher; and (d) harm. Gooch v. Maryland Mechanical Sys., Inc., 567 A.2d 954, 961 (Md. Ct. Spec.App.), cert. denied, 573 A.2d 807 (Md.1990). A statement is defamatory if it "either directly or by implication, ascribes dishonesty, fraud, lack of integrity, or reprehensible conduct to the [subject of the statement]." Lehigh Chem. Co. v. Celanese Corp. of Am., 278 F.Supp. 894, 896 (D. Md.1968). More generally, "[a] defamatory statement is one which tends to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or from associating or dealing with, that person." Batson v. Shiflett, 602 A.2d 1191, 1210 (Md.1992). As a threshold matter, the trial court must determine whether the statement is reasonably susceptible of a defamatory meaning; if so, then it is for the jury to decide whether the statement is actually defamatory. Id. at 1210-11. In its inquiry, the trial court must consider the words "in their common and ordinary meaning, in the sense in which they are generally used." Id. at 1211 n. 14. Further, the trial court must view the publication "in its entirety," reading all statements in the context of the document as a whole. Hohman v. A.S. Abell Co., 407 A.2d 794, 797 (Md. Ct. Spec.App.1979).
 
 
 15
 Koolvent argues that the district court erred by reading the letter too technically, i.e., from the perspective of a lawyer reading a contract rather than the perspective of a layperson reading a letter sent to his home. We agree. The first paragraph of the letter discusses the recipients' relationship with Koolvent; the second explains how some homeowners were deceived; and the fourth encourages the recipients to contact the Azrael law firm if Koolvent has deceived them. It is eminently reasonable that the recipients would conclude, solely by reading this letter in its entirety, that Koolvent had deceived some of its customers through a fraudulent scheme. Maryland courts have found that readers could find defamation from words with similarly indirect references. See Batson, 602 A.2d at 1211 (union flyer stating that plaintiff "may" be guilty of misusing funds because he signed the checks for a person who did misuse funds was reasonably susceptible of a defamatory meaning).* Thus, we conclude that the letter is reasonably susceptible of a defamatory meaning.
 
 
 16
 The district court ruled that to the extent that the letter could be found defamatory from reading the second and fourth paragraphs, the third paragraph, which the court labeled a disclaimer, placed them in context. This one-sentence paragraph states: "We do not mean to suggest that you should be dissatisfied with your home improvement contractor or the work that was done for you if you are a satisfied customer." This sentence is too oblique to place the other paragraphs into a neutral context. First, it does not directly disclaim a connection between Koolvent and the fraudulent conduct or the Sears litigation; it never states that Koolvent has not been accused of deceiving other customers or even that Koolvent is not a defendant in the Sears litigation. Further, a reasonable recipient could read this sentence as referring only to the workmanship of the home improvements rather than the manner in which the improvements were financed. See Hohman, 407 A.2d at 796-97 (partial disclaimer not sufficient, reading newspaper article in its entirety, to permit only a conclusion that the article was not susceptible of a defamatory meaning). Thus, we disagree with the district court that the disclaimer places the letter in a clearly nondefamatory context.
 
 III.
 
 17
 The Azrael law firm also argues that even if the letter is reasonably susceptible of a defamatory meaning, this court should nevertheless affirm the grant of summary judgment because the letter is protected by attorney privilege as a matter of law. "An attorney at law is absolutely privileged to publish defamatory matter concerning another in the course of a judicial proceeding in which he participates as counsel so long as the matter published has some reference or relation to the proceeding." Dixon v. DeLance, 579 A.2d 1213, 1216 (Md. Ct. Spec.App.1990), cert. denied, 583 A.2d 275 (1991). This privilege also applies to lawsuits that have not yet been filed if the proceeding " 'is contemplated in good faith and under serious consideration' "; however, " '[t]he bare possibility that the proceeding might be instituted is not' " sufficient. Arundel Corp. v. Green, 540 A.2d 815, 819 (Md. Ct. Spec.App.1988) (quoting Restatement (Second) of Torts Sec. 586 cmt. e (1977)).
 
 
 18
 The Azrael law firm claims that the letter is privileged because it was an attempt to collect information for the pending Sears litigation (i.e., to determine whether the defendant finance companies were involved in similar schemes with other contractors), and because it was sent in preparation for litigation that was being seriously considered against Koolvent. However, Koolvent argues that it is entitled to further discovery to determine whether the letter was actually sent only to those customers of Koolvent who may have had some relationship with parties to the Sears litigation, and if not, whether a lawsuit against Koolvent was more than a mere possibility before the letter was mailed.
 
 
 19
 We cannot conclude from the record before us that attorney privilege protects this letter as a matter of law. We agree with Koolvent that additional discovery is necessary before this claim may be properly considered.
 
 IV.
 
 20
 In conclusion, we hold that the letter is reasonably susceptible of a defamatory meaning. Accordingly, the district court erred in granting summary judgment on this basis. We reverse and remand for further proceedings consistent with this opinion.
 
 REVERSED AND REMANDED
 
 
 *
 The Azrael law firm insisted for the first time at oral argument that the letter is at most libel per quod rather than libel per se and that Koolvent failed to specify the extrinsic facts and innuendo necessary to make the statement defamatory. See Gooch, 567 A.2d at 962. Libel per se is libel "on its face," i.e., "the 'words themselves impute the defamatory character.' " Embrey v. Holly, 429 A.2d 251, 258 (Md. Ct. Spec.App.1981) (quoting Metromedia, Inc. v. Hillman, 400 A.2d 1117, 1123 (Md.1979)), rev'd in part on other grounds, 442 A.2d 966 (Md.1982). If the defamatory nature of the publication is not apparent on its face, then it is libel per quod. Id. Here, the defamatory nature is apparent from simply reading the letter as a whole. The fact that the words may require an obvious, common sense inference to be defamatory does not make the letter potentially libel per quod, as long as the inference is reached solely from an ordinary reading. See Wineholt v. Westinghouse Elec. Corp., 476 A.2d 217, 219-20 (Md. Ct. Spec.App.), cert. denied, 483 A.2d 38 (Md.1984) (statement that "apartment was being used to fence stolen goods" is sufficient to be potentially defamatory per se as to the tenant). Thus, the letter is properly classified as libel per se