FINKELSTEIN, THOMPSON & LOUGHRAN and Donald J. Enright, Appellants,

v.

HEMISPHERX BIOPHARMA, INC., Appellee.

No. 99–CV–338.

District of Columbia Court of Appeals.

Argued Feb. 29, 2000.

Decided June 14, 2001.

Steven R. Becker, with whom Pamela A. Bresnahan was on the brief, Washington, DC, for appellants.

Conrad M. Shumadine, of the bar of the State of Virginia, pro hac vice, with whom Eugene J. Comey, Sharon M. Schroer, Elizabeth A. Wieser, Washington, DC, Gary A. Bryant, and Wendy E. Giberti were on the brief, for appellee.

Before TERRY, RUIZ and GLICKMAN, Associate Judges.

GLICKMAN, Associate Judge:

Appellee Hemispherx Biopharma, Inc. ("Hemispherx") sued appellants Donald J. Enright and his law firm Finkelstein, Thompson & Loughran, claiming that Enright slandered it when he solicited one of Hemispherx's shareholders as a client in order to bring a potential shareholders' derivative or class action lawsuit against Hemispherx. Invoking the absolute privilege recognized in this jurisdiction for defamatory statements by an attorney that are preliminary to a proposed judicial proceeding, appellants moved to dismiss the defamation count of the complaint. The trial court denied the requested relief, and appellants filed the instant interlocutory appeal.

The principal issues we address are whether we have jurisdiction, and if so whether the so-called "judicial proceedings privilege" may extend to statements made by an attorney in an initial consultation

with a prospective client from whom the attorney is "soliciting" employment. We hold that we do have jurisdiction, because the denial of a claim of absolute immunity from suit is immediately appealable under the collateral order doctrine. We further hold that the judicial proceedings privilege is available, if its requirements are met, to cover statements made by an attorney to a prospective client in a pre-retention meeting.

Applying the latter holding to the complaint in this case, we conclude that on the facts as alleged, Enright's statements to Hemispherx's shareholder were absolutely privileged as a matter of law. Accordingly, we reverse the denial of appellants' motion to dismiss.

## I.

 As alleged in its complaint,[1] Hemispherx is a publicly traded corporation engaged in experimental drug research and development. The company's principal focus has been the clinical testing and promotion of an anti-viral compound known as Ampligen for the possible treatment of chronic fatigue syndrome, hepatitis and other serious medical conditions. Preliminary results allegedly have been encouraging, and the FDA has granted Ampligen investigative new drug status.

In September 1998, however, an analyst named Manuel P. Asensio published over the Internet a "strong sell recommendation" for Hemispherx's common stock, along with a research report that severely criticized the company and its Chief Executive Officer, Dr. William A. Carter. According to the complaint, the report was libelous and contained numerous misstatements and omissions of material fact. Nonetheless, Asensio's comments were picked up and reported in the September 28, 1998, issue of *Business Week*. Within a matter of days, the price of Hemispherx's stock, which was traded on the American Stock Exchange, dropped from around $13 per share to approximately $5 per share.[2]

Prior to September 28, 1998, shareholders posted messages concerning Hemispherx on an electronic bulletin board devoted to the company that was maintained on the "Yahoo!" Internet site. On or about that date, the complaint alleges, appellants Finkelstein, Thompson & Loughran, a Washington, D.C. law firm (hereinafter, "FTL"), and Donald J. Enright, an attorney associated with that firm, sent an unsolicited electronic mail message to a shareholder (identified only as "Shareholder A") who had previously posted a message on the Hemispherx bulletin board. The message to Shareholder A stated that

1. Dismissal of a complaint under Super. Ct. Civ. R. 12(b)(6) for failure to state a claim upon which relief can be granted "is warranted only when it appears beyond doubt that the plaintiff[s] can prove no *set of facts* in support of [their] claim which would entitle [them] to relief." *Fred Ezra Co. v. Pedas*, 682 A.2d 173, 174 (D.C.1996) (internal quotation marks and citations omitted). In reviewing the trial court's denial of a Rule 12(b)(6) motion, this court must therefore "construe the facts on the face of the complaint in the light most favorable to the non-moving party, and accept as true the allegations in the complaint." *Id.*

2. The complaint alleges that Asensio issued his report as part of a conspiracy to drive down the price of its stock in order to reap large profits from illegal short selling. Hemispherx claims that its market capitalization declined by more than $300 million as a result of the scheme. Hemispherx sued Asensio, his company, and numerous others (not including appellants here or *Business Week*) in the United States District Court for the Eastern District of Pennsylvania. The suit was eventually dismissed for lack of subject matter jurisdiction. *See Hemispherx Biopharma, Inc. v. Asensio*, No. 98–5204, 2000 WL 807012, 2000 U.S. Dist. LEXIS 8737 (E.D. Pa. June 6, 2000).

FTL "handles plaintiffs' class action law suits in the securities field" and that it is "investigating Hemispherx Biopharma Inc. at this time." The message invited Shareholder A to contact Enright if he was "interested in discussing this matter further."

Shareholder A, who was not a client of Enright or FTL, apparently was interested in discussing "this matter" with them, for he telephoned Enright in response to the e-mail message and spoke with him for nearly an hour. The following day, Shareholder A sent Hemispherx a letter recounting what Enright said to him, together with contemporaneous notes of the conversation. Shareholder A also transmitted a report to the Hemispherx bulletin board at Yahoo!

According to Shareholder A, Enright said that he "specializes in finding 'bogus' companies to sue." He had been in communication with Asensio, and he claimed that he agreed with Asensio's report on Hemispherx except for minor details. Enright said that Ampligen was "a drug looking for a disease." It had "been around" for over ten years, and had been considered as a possible treatment for one disease after another; this, Enright said, "was no way a 'real' pharmaceutical company went about pursuing new drug research." Enright reportedly added that Hemispherx had no proprietary rights to Ampligen, and that therefore anyone would be able to make and sell the drug after it received FDA approval. Further, Enright allegedly stated that Dr. Carter was less than trustworthy,[3] and that he and other Hemispherx executives might be transferring money into secret accounts and passing off warrants so as to leave a shell company for the shareholders. En-

right suggested that his law firm could recover the shareholders' losses by pursuing any directors' and officers' liability insurance that Hemispherx had in place.

The complaint claims that Enright's statements that Hemispherx had no proprietary rights in Ampligen, and that Carter and other executives might be secreting money and issuing warrants to cheat the shareholders by leaving them with a shell company, were false and misleading. The first count of the complaint charges appellants with defamation; and it alleges that "Enright's statements were made with malice, in that they were made with knowledge of or with reckless disregard for the truth." A second count charges that Enright also violated Rule 7.1(b) of the District of Columbia Rules of Professional Conduct, by making materially false and misleading statements in soliciting Shareholder A as a potential client. The complaint seeks an order enjoining FTL and Enright from soliciting its shareholders as their clients in class or derivative litigation based on false and misleading statements, and an award of compensatory damages "in excess of $5,000."

Appellants moved to dismiss the complaint pursuant to Super. Ct. Civ. R. 12(b)(6). They sought dismissal of the defamation count on the principal ground that Enright's statements were absolutely privileged as statements preliminary to a proposed judicial proceeding. In opposition, Hemispherx argued that in the District of Columbia the judicial proceedings privilege had never been held to protect statements made by an attorney in the course of soliciting a client, and that the privilege is properly limited to "statements made in the regular course of an existing or immi-

**3.** Shareholder A's notes of his conversation with Enright allegedly contain the notation "Carter—Liar will scam."

nent judicial proceeding ... in which the attorney is acting as counsel." [4]

The trial court denied the motion to dismiss the defamation count without opinion. FTL and Enright promptly noted this appeal.[5]

## II.

■ Along with the overwhelming majority of the States, the District of Columbia has long recognized an absolute privilege for statements made preliminary to, or in the course of, a judicial proceeding, so long as the statements bear some relation to the proceeding. We have adopted the articulation of the so-called "judicial proceedings" privilege that is set forth in § 586 of the RESTATEMENT (SECOND) OF TORTS (1977):

> An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding.

*See McBride v. Pizza Hut, Inc.,* 658 A.2d 205, 207–08 (D.C.1995); *see also Arneja v. Gildar,* 541 A.2d 621, 623 (D.C.1988) ("[f]or the absolute immunity of the privilege to apply, two requirements must be satisfied: (1) the statement must have been made in the course of or preliminary to a judicial proceeding; and (2) the statement must be related in some way to the underlying

proceeding"); *Mohler v. Houston,* 356 A.2d 646, 647 (D.C.1976) (per curiam) (citing § 586 of the 1938 version of the Restatement of Torts); *Brown v. Collins,* 131 U.S.App. D.C. 68, 71, 402 F.2d 209, 212 (1968) (noting that the Restatement of Torts states "the American rule that no defamation action may be grounded on ... statements preliminary to or in the course of a judicial proceeding so long as the defamatory matter 'has some relation'—a standard broader than legal relevance—to the proceeding").

■ The judicial proceedings privilege is "based upon a public policy of securing to attorneys as officers of the court the utmost freedom in their efforts to secure justice for their clients." RESTATEMENT (SECOND) OF TORTS § 586 comment a. To that end, the privilege is absolute rather than qualified: it "protects the attorney from liability in an action for defamation irrespective of his purpose in publishing the defamatory matter, his belief in its truth, or even his knowledge of its falsity." *Id.* The intent of the privilege is not, of course, to encourage lawyers to defame, nor to protect lawyers who do so in bad faith, though in some instances that may be a regrettable (indeed, a deplorable) side effect of recognizing the existence of the privilege. Rather, the intent of the privilege is to free honorable lawyers to render candid and zealous advice and representation to their clients without fear of retaliatory harassment from their adversaries. *See Arneja,* 541 A.2d at 624. "The [absolute privilege] exists, not because the mali-

---

4. The parties also disputed whether the other count of the complaint, charging a violation of Rule 7.1(b), stated a cognizable claim. *See* D.C. RULES OF PROFESSIONAL CONDUCT, SCOPE [4] (Rules are not intended to enlarge existing law regarding the liability of lawyers to others, or "to confer rights on an adversary of a lawyer to enforce the Rules in a proceeding other than a disciplinary proceeding").

5. The trial court granted the motion to dismiss the other count of the complaint. Although Hemispherx filed a cross-appeal from that ruling, it subsequently withdrew its appeal. The issue of whether the count alleging a violation of the Rules of Professional Conduct stated a claim upon which relief could be granted is therefore not before us.

cious conduct of [lawyers] ought not to be actionable, but because, if their conduct were actionable, actions would be brought against them in cases in which they had not spoken falsely and maliciously...." Van Vechten Veeder, *Absolute Immunity in Defamation: Judicial Proceedings (Part I)*, 9 COLUM. L.REV. 463, 469–70 (1909).[6]

Appellants argue that the trial court erred in denying their motion to dismiss because—accepting the allegations of the complaint as true and construing them in the light most favorable to Hemispherx—Enright's allegedly defamatory statements to Shareholder A were preliminary to a proposed judicial proceeding and bore some relation to that proceeding, and thus were absolutely privileged. Hemispherx counters that the absolute privilege envisioned in § 586 of the Restatement and prior decisions in this jurisdiction is available only to an attorney who is acting on behalf of an existing client in an ongoing legal dispute or proceeding. Hemispherx contends that the absolute privilege is not available to an attorney who is merely soliciting a prospective client for a potential lawsuit that the attorney suggests they might pursue.

### A.

Before addressing the merits of the parties' contentions, we must first consider our jurisdiction to proceed with this interlocutory appeal. This court has jurisdiction to review "final orders and judgments" of the Superior Court. *See* D.C.Code § 11–721(a)(1) (1995). "Final orders" have been defined as those that "dispose[ ] of the whole case on its merits so that the court has nothing remaining to do but to execute the judgment or decree already rendered." *In re Estate of Chuong*, 623 A.2d 1154, 1157 (D.C.1993) (en banc) (quoting *McBryde v. Metropolitan Life Ins. Co.*, 221 A.2d 718, 720 (D.C. 1966)). The denial of a motion to dismiss a complaint is not a final order in this sense and hence is usually not immediately appealable.[7]

Under the collateral order doctrine, however, a ruling such as the denial of a motion to dismiss may be appealable if it has "a final and irreparable effect on important rights of the parties." *Bible Way Church of Our Lord Jesus Christ of the Apostolic Faith v. Beards*, 680 A.2d 419, 425 (D.C.1996) (internal quotation marks and citation omitted). To qualify for immediate appellate review, the ruling must satisfy three requirements: (1) it must conclusively determine a disputed question of law; (2) it must resolve an important issue that is separate from the

---

6. Although we are bound by our precedents, we note that contemporary legal scholars have questioned whether the public policy rationale for a judicial proceedings privilege justifies more than a qualified privilege, which would not protect lawyers who make defamatory statements maliciously or in bad faith. *See, e.g.,* 1 GEOFFREY C. HAZARD, JR. & W. WILLIAM HODES, THE LAW OF LAWYERING § 4.15 (3d ed.2001) (opining that absolute immunity "seems highly dubious," and that a qualified immunity "should be sufficient to protect lawyers from unwarranted lawsuits"); Paul T. Hayden, *Reconsidering the Litigator's Absolute Privilege to Defame*, 54 OHIO ST. L.J. 985, 1043 (1993) ("while litigators are in need of some

protection from harassing lawsuits simply because of the nature of their jobs, the absolute privilege protects them too much"). In delimiting the reach of the judicial proceedings privilege, we are mindful of its costs, which are borne not only by the defamed person, who is denied a remedy, but also by the legal profession, which is sullied by lawyer misconduct.

7. The denial of a motion to dismiss is not the type of interlocutory order from which an appeal may lie to this court under D.C.Code § 11–721(a)(2)(A–C) and (a)(3).

merits of the case; and (3) it must be effectively unreviewable on appeal from a final judgment. *Id.* at 425–26; *see also In re Ti. B.,* 762 A.2d 20, 25 (D.C.2000).

■ The denial of a motion that asserts an immunity from being sued is the kind of ruling that is commonly found to meet the requirements of the collateral order doctrine and thus be immediately appealable, so long as the ruling turns on an issue of law rather than on a factual dispute. *See generally Johnson v. Jones,* 515 U.S. 304, 313, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995); *Mitchell v. Forsyth,* 472 U.S. 511, 525–29, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). This court, for example, has held that a defendant church may appeal the denial of a motion to dismiss based on a claim of immunity from suit under the First Amendment. *See Bible Way Church,* 680 A.2d at 426; *United Methodist Church, Baltimore Annual Conference v. White,* 571 A.2d 790, 792–93 (D.C.1990). In defamation actions, other courts likewise have held that the denial of a motion to dismiss or for summary judgment based on a claim of absolute privilege under the common law—deemed equivalent to a claim of absolute immunity—is immediately appealable under the collateral order doctrine. *See Shanks v. AlliedSignal, Inc.,* 169 F.3d 988, 991–92 (5th Cir.1999); *Boice v. Unisys Corp.,* 50 F.3d 1145, 1148–49 (2d Cir.1995).

■ Consistent with these cases, we hold that we have jurisdiction to hear the appeal of FTL and Enright from the denial of their motion to dismiss based on their claim of absolute privilege. The determin-

ing consideration is that the judicial proceedings privilege is more than a defense to liability. The privilege is intended to "afford[ ] an attorney absolute *immunity* from actions in defamation for communications related to judicial proceedings." *Arneja,* 541 A.2d at 623 (emphasis added). The essence of an immunity from suit is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell,* 472 U.S. at 526, 105 S.Ct. 2806. "The doctrine of absolute immunity for statements in judicial proceedings reflects a judgment that the need for completely free speech for litigants is dominant, and that this freedom is not to be endangered by subjecting parties to the burden of defending their motives in subsequent slander litigation, or to the risk that juries may misapprehend those motives." *Brown,* 131 U.S.App. D.C. at 72, 402 F.2d at 213.[8]

From the fact that the judicial proceedings privilege affords an absolute immunity from suit, it follows that the criteria of appealability under the collateral order doctrine are satisfied in this case. First, in denying the motion to dismiss and thereby requiring FTL and Enright to defend the litigation, the trial court "conclusively determined (by rejecting)" their claim of immunity. *Bible Way Church,* 680 A.2d at 426. Second, the issue of immunity from having to defend against Hemispherx's defamation claim is separate from the merits of that claim. *See Mitchell,* 472 U.S. at 528, 105 S.Ct. 2806 ("a question of immunity is separate from the merits of the underlying action"). Whether Enright's remarks to Shareholder A were "preliminary to" a proposed judicial

---

8. The Restatement makes the same point:

These absolute privileges are based chiefly upon a recognition of the necessity that certain persons, because of their special position or status, should be as free as possible from fear that their actions in that position might have an adverse effect upon their own personal interests. To accomplish this, it is necessary for them to be protected not only from civil liability but also from the danger of even an unsuccessful civil action.

RESTATEMENT (SECOND) OF TORTS Ch. 25, Title B, at 243.

proceeding and had "some relation" to that proceeding are different questions from whether Enright's remarks were false, malicious, defamatory or damaging. There may be some overlap, but it is minimal. Furthermore, involving as it does an issue of public policy that transcends the parties' individual concerns, the judicial proceedings privilege is sufficiently "important" to justify immediate appeal pursuant to the collateral order doctrine. *See Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 878, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994) (emphasizing that right at stake must be "important" in order to trigger right to immediate appeal of prejudgment order). Third, the trial court's denial of appellants' absolute immunity claim is effectively unreviewable on appeal from a final judgment, because by then the purported "entitlement not to stand trial or face the other burdens of litigation" would be lost irretrievably. *Mitchell*, 472 U.S. at 526, 105 S.Ct. 2806. "A fully litigated case can no more be untried than the law's proverbial bell can be unrung," as the Supreme Court said in *Digital Equipment Corporation. See* 511 U.S. at 872, 114 S.Ct. 1992.

**B.**

■ Despite its name, the judicial proceedings privilege does not protect only statements that are made in the institution of a lawsuit or in the course of litigation. The privilege extends to some statements that are made prior to the commencement of litigation, for instance "in conferences and other communications preliminary to the proceeding." RESTATEMENT (SECOND) OF TORTS § 586 comment a. *See, e.g., McBride*, 658 A.2d at 207–08 (written correspondence between parties' counsel concerning threatened lawsuit); *Conservative Club of Washington v. Finkelstein*, 738 F.Supp. 6, 14 (D.D.C.1990) (oral statements relating to threat of litigation, made

"to the very individuals who would have an interest in the outcome of such litigation," and deemed to be "quite analogous to" statements "that are often contained in demand letters"). *See also Arundel Corp. v. Green*, 75 Md.App. 77, 540 A.2d 815, 819 (1988) (statements contained in letter sent to customers of putative defendant as part of attorney's pre-suit investigation).

■ An absolute privilege "is not lightly conferred, however, as it protects deliberate lies told with intent to destroy reputation." *Brown*, 131 U.S.App. D.C. at 72, 402 F.2d at 213. Especially where no judicial proceeding has begun, caution is warranted lest we countenance "a privilege for a lawyer to be bumptious and unrestrained in all matters vaguely related to litigation and regardless of whether the communication is calculated to advance or to retard justice or the [potential] proceeding." CHARLES W. WOLFRAM, MODERN LEGAL ETHICS 231 (1986). We agree with the admonition in *Brown* that, "[w]here dealing with preliminary statements other than witness briefings, settlement discussions and the like, there is need for particularly close attention to the factual circumstances, recognizing that unlike statements made in court, these communications are not cabined by a [lawyer's] recognition that contempt of court may follow if they are outrageously unnecessary and intemperate, even though more or less relevant." 131 U.S.App. D.C. at 72, 402 F.2d at 213 (footnotes omitted).

■ One requirement that must be satisfied for the judicial proceedings privilege to be available for statements made prior to the institution of litigation is that the statements in issue must be "made by an attorney while performing his function as such." RESTATEMENT (SECOND) OF TORTS § 586, comment c. "Therefore it is available only when the defamatory matter has

342

some reference to the subject matter of the proposed ... litigation, although it need not be strictly relevant to any issue involved in it." *Id.* There must, in other words, be a reasonable nexus between the publication in question and the litigation under consideration. Thus, a survey of the case law indicates that "[u]nder circumstances where the defamatory statements, though ostensibly in the course of pertinent investigation or preparation, were published to persons not having an interest or connection to the litigation, or where the defamatory statements did not have a sufficient relation to the subject matter of the litigation, the privilege has been held to be inapplicable." Vitauts M. Gulbis, Annotation, *Libel and Slander: Attorneys' Statements, to Parties Other Than Alleged Defamed Party or its Agents, in Course of Extrajudicial Investigation or Preparation Relating to Pending or Anticipated Civil Litigation as Privileged,* 23 A.L.R.4th 932, 936 (1983).

■ In addition, the relationship to potential litigation must be genuine, and not a mere afterthought or sham rationale:

As to communications preliminary to a proposed judicial proceeding the rule stated in this Section applies only when the communication has some relation to a proceeding that is contemplated in good faith and under serious consideration. The bare possibility that the proceeding might be instituted is not to be used as a cloak to provide immunity for defamation when the possibility is not seriously considered.

RESTATEMENT (SECOND) OF TORTS § 586 comment e.

■ With the foregoing requirements and cautionary considerations in mind, we conclude that, as the pertinent facts and circumstances are described in the complaint, Enright's remarks to Shareholder A about Hemispherx and its management

were protected by the judicial proceedings privilege. Appellants' initial e-mail message to Shareholder A expressly identified FTL as a firm that "handles plaintiffs' class action law suits in the securities field," and stated that the firm was "investigating" Hemispherx. The message invited Shareholder A to contact Enright if he was interested in discussing the matter, which (from the law firm's perspective, at least) could only mean if he was interested in discussing the merits and feasibility of a shareholders' action against Hemispherx. In the telephone conversation that Shareholder A then initiated, Enright talked specifically about filing suit, discussing the possible claims against Hemispherx, the basis for those claims, and the prospects for recovering damages for the shareholders through litigation. It is apparent from these allegations (and, commendably, it is conceded by Hemispherx) that FTL and Enright were seriously contemplating a lawsuit against Hemispherx and its officers on behalf of the shareholders. It is equally plain that Enright's statements to Shareholder A were directly related to the subject matter of that potential lawsuit, and were made to a person who, as a prospective plaintiff and client (and as someone who chose to respond to FTL's invitation), had an interest in and connection to the litigation.

■ It may be true, as Hemispherx argues, that at the time Enright spoke with Shareholder A, a lawsuit was not imminent. No claims had yet been asserted against the company, no legal dispute between opposing parties had erupted, and no "clear, unequivocal threat of a lawsuit" had been voiced. *McBride,* 658 A.2d at 208. Where there has been such an overt display of contention, it may well be easier for a court to be satisfied that the requirements of the judicial proceedings privilege are met. Nonetheless, given the underly-

ing policy justification for the privilege, an actual outbreak of hostilities is not required, so long as litigation is truly under serious consideration and the communications in issue bear a sufficient relationship to that potential litigation.

■ We likewise are not persuaded by Hemispherx's argument that the judicial proceedings privilege is unavailable because Enright was merely speaking to ("soliciting") a *prospective* client. By its terms, the articulation of the privilege in Restatement § 586 that this court has adopted does not purport to exclude coverage if an attorney's defamatory statements are made in soliciting employment by a prospective client.[9] And although no previous case in this jurisdiction has addressed the question, courts elsewhere have held that the judicial proceedings privilege is indeed applicable to statements made in client solicitations. In *Samson Investment Co. v. Chevaillier, Mysock & Chevaillier*, 988 P.2d 327, 328 (Okla.1999), the Supreme Court of Oklahoma held that an attorney's circulation to a prospective client of a proposed class action complaint, which charged that the "Samson entities" had defrauded investors, was absolutely privileged and hence could not be the basis of a defamation action against the attorney. The court stated: "No case is cited by Samson, and our research has revealed none, to support its argument that the litigation privilege only applies after the client has retained an attorney. The Restatement does not support this position,

as it only requires that the communication be relevant to the probable proceeding. . . . The purpose behind the litigation privilege of permitting open communication to facilitate the right of access to judicial and quasi-judicial proceedings . . . would be thwarted if Samson's argument was adopted." *Id.* at 331 (internal quotation marks and citation omitted).

For similar reasons, the Minnesota Court of Appeals held in *Kittler v. Eckberg, Lammers, Briggs, Wolff & Vierling*, 535 N.W.2d 653, 654 (Minn.App.1995), that the absolute judicial proceedings privilege protected a law firm from being sued for defamatory statements in a solicitation letter to potential plaintiffs in a possible shareholders' action against the officers and directors of their corporation. In so holding, the court embraced the reasoning of the California Supreme Court in *Rubin v. Green*, 4 Cal.4th 1187, 17 Cal.Rptr.2d 828, 847 P.2d 1044 (1993). *See Kittler*, 535 N.W.2d at 656. In that case the owner of a mobile home park alleged that attorneys had wrongfully solicited residents of the park as clients in anticipated litigation over park conditions. *See Rubin*, 17 Cal. Rptr.2d 828, 847 P.2d at 1045. The court held that the attorneys' communications with the park residents were protected by the absolute judicial proceedings privilege. *See id.* at 1047. "In short," the court said, "we can imagine few communicative acts more clearly within the scope of the privilege than . . . meeting and discussing with [the potential plaintiffs] park conditions

---

9. Hemispherx contends that the requirement in § 586 of "a judicial proceeding in which [the attorney] participates as counsel" shows that the attorney must have already been engaged by a client for the privilege to obtain. However, while the point is a purely formal one and hence not necessarily dispositive, § 586 does not state that "participation as counsel" is a requirement where the communications are "preliminary to a proposed ju-

dicial proceeding," but only where the communications occur "in the institution of, or during the course and as a part of, a judicial proceeding." If there is an implicit requirement in the case of a proposed judicial proceeding that the attorney must expect to participate in the proceeding—a question that we do not decide—that requirement is satisfied here on the facts as alleged.

and the merits of the proposed failure-to-maintain lawsuit...." *Id.* at 1048.[10]

The complaint in the present case alleges that Shareholder A responded to FTL's e-mail invitation by taking the affirmative step of contacting Enright for what was—so far as appears from the pleading—a preliminary consultation concerning the possibility of litigation. It was not until that consultation was held at Shareholder A's initiative that the allegedly defamatory statements were made. This is not a pure case, therefore, of an attorney making otherwise actionable statements in an unsolicited initial communication to persons who might be potential clients but who had previously given no thought whatsoever to a lawsuit or even the possibility of a dispute. Whatever reservations we might have about endorsing an absolute privilege for defamatory statements in that type of introductory communication need not, therefore, constrain us here. In *Popp v. O'Neil*, 313 Ill.App.3d 638, 246 Ill.Dec. 481, 730 N.E.2d 506, 508 (2000), the court addressed the applicability of the judicial proceedings privilege to defamatory statements made by an attorney to a potential client during a preliminary legal consultation. Recognizing that communications between an attorney and an *existing* client concerning a proposed lawsuit may be covered by the judicial proceedings privilege—a premise we think unarguable, and certainly not disputed here—the court reasoned that the public policy supporting the privilege is "equally compelling" when an attorney is conferring with a *prospective* client:

> The general public policy underlying the absolute privilege is the need for an attorney to be able to speak his mind fully and fearlessly when communicating with his client.... Such an open and honest exchange is necessary for the client to assess the circumstances at hand and to determine the appropriate course of action.... [T]he need for open and full communication is equally compelling during the preliminary legal consultations between an attorney and a potential client. The purpose of such consultations is to permit an individual to seek counsel from a professional legal advisor concerning a matter of concern to the individual. The need for full and frank consultation is essential in order for both the individual and the attorney to determine the potential courses of action and the desirability of creating an ongoing attorney-client relationship.

*Id.* at 510–11 (internal citations omitted).

■ We think that this reasoning is sound. The rationale of the judicial proceedings privilege—to encourage attorneys to speak freely and candidly, undeterred by the fear of an action for defamation, "in their efforts to secure justice for their clients,"[11]—is compelling when an attorney is advising a current or a prospective client of opportunities to pursue legal redress against a third party. Particularly in complex areas such as securities law,

---

**10.** In *Koolvent Aluminum Products, Inc. v. Azrael, Gann & Franz*, No. 94–1906, 52 F.3d 321, 1995 U.S.App. LEXIS 8858 (4th Cir., April 18, 1995) (per curiam), an unpublished opinion cited by Hemispherx, a law firm claimed privilege under Maryland law for defamatory statements in letters it allegedly sent out to collect information for pending litigation and to solicit clients for a new lawsuit. The court of appeals recognized that the judicial proceedings privilege may cover statements by an attorney in soliciting prospective clients, though it remanded the case to permit discovery into whether the factual preconditions for the privilege were met (including whether the new lawsuit was in fact under serious consideration). Such a remand is unnecessary on the alleged facts of this case.

**11.** RESTATEMENT (SECOND) OF TORTS § 586 comment a.

laypersons may be unaware that they have been victimized and have meritorious claims unless they are so informed by attorneys who have the investigative resources, expertise and motivation to pursue the matter. *See generally Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 366–72, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966) (recognizing important role of lawyers in protecting rights of unsophisticated investors in shareholders' derivative suits); 7C CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY K. KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 1827 (1986). Withholding the judicial proceedings privilege from pre-retention discussions would unwisely chill the provision of such information. We therefore hold that communications during preliminary consultations with prospective clients, including contacts that may be characterized as client solicitations, are within the coverage of the judicial proceedings privilege.

Hemispherx argues that even under that holding, the privilege should be available only if the prospective client is already considering litigation seriously. Otherwise, Hemispherx contends, a law firm "trolling for clients" and motivated (it is said) by self-interest will have "*carte blanche* authority to lie about any potential target regardless of whether it had actual or proposed clients who were even pondering, much less seriously considering litigation." Hemispherx states in its brief that it expects to demonstrate through discovery that unlike FTL, Shareholder A was not considering litigation when he consulted with Enright, but was "simply seeking information." Accordingly, Hemispherx asks us to affirm the denial of appellants'

motion to dismiss in order that such discovery may proceed.

■ We think the better view is that the availability of the judicial proceedings privilege for statements by an attorney depends on the state of mind of the attorney, not that of the client. In many, perhaps almost all, cases in which the privilege applies, both the attorney and the client will be considering litigation seriously when the statements at issue are made. But the policy behind the privilege fully supports its extension to cases in which an attorney who is considering a lawsuit seriously advises a client or potential client who—perhaps unbeknownst to the attorney—is not.

This case would be different if Hemispherx had alleged that Shareholder A *explicitly told Enright* at the outset of their telephone conversation that he was not seeking legal advice, had no interest in a lawsuit, and was calling merely to obtain information about the company in which he was an investor. If those were the facts, then even if Enright did seriously envision litigation, his statements to Shareholder A might not be privileged because they would not have been "made by an attorney while performing his function as such." RESTATEMENT (SECOND) OF TORTS § 586 comment c. But there is not the slightest suggestion of such facts in the complaint, in Hemispherx's other filings in the trial court, or in its briefs or argument in this court. The gist of Hemispherx's complaint is that Shareholder A spoke with Enright as—to all appearances, at least—a prospective client who was responding with interest to the possibility of suing Hemispherx and its officers for damages.[12]

---

12. Our opinion does not foreclose Hemispherx from seeking leave on remand to recast its complaint to allege that Shareholder A did tell Enright that he had no interest in considering a lawsuit, if Hemispherx believes it can

do so. But that allegation appears so unlikely, and would result in a complaint so different from the one now before us, that we do not think that dismissal of the present complaint can be avoided on the theory that a set

Reading the complaint in the light most favorable to Hemispherx, and accepting its allegations as true, Enright's statements to Shareholder A were covered by the absolute judicial proceedings privilege. *See Fred Ezra Co.*, 682 A.2d at 174 We conclude that the trial court was required to grant appellants' motion to dismiss the defamation count.

In so holding, we are mindful that we must be cautious in according an absolute privilege for defamatory statements made out of court and prior to the start of litigation. *See Brown*, 131 U.S.App.D.C. at 72, 402 F.2d at 213. "Attorneys do not possess a license to defame their adversaries," *Arneja*, 541 A.2d at 624. The court in *Demopolis v. Peoples National Bank of Washington* observed that "an absolute privilege is allowed only in situations in which authorities have the power to discipline as well as strike from the record statements which exceed the bounds of permissible conduct." 59 Wash. App. 105, 796 P.2d 426, 430 (1990) (internal quotation marks and citation omitted). We would be loath to recognize an absolute immunity from a defamation action in cases such as this one if we thought that there exist "no safeguards against abuse." *Id.* It thus bears emphasizing that an attorney who libels or slanders another speaks at his own peril, notwithstanding the judicial proceedings privilege. If the specific requirements of the privilege are not satisfied, the claim of privilege will be rejected and the attorney will be exposed to liability for damages in an action by the injured party. But even where the requirements of the privilege are met, the consequent immunity from a defamation suit does not mean that the attorney may not be sanctioned for misconduct. An attorney who makes false and defamatory statements to inveigle a client into filing a

frivolous lawsuit risks a malpractice action by the client and a malicious prosecution action by the party defamed, from which the judicial proceedings privilege will afford no protection. An attorney who asserts bad faith claims may also face both judicial sanctions imposed pursuant to Super. Ct. Civ. R. 11 or in the exercise of the court's inherent powers, *see Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991), and bar discipline for violating ethical mandates. *See, e.g.*, D.C. RULES OF PROFESSIONAL CONDUCT RULE 7.1(b) (prohibiting a lawyer from soliciting employment by means of false or misleading statements); Rule 3.1 (prohibiting a lawyer from pursuing frivolous claims). We appreciate that these alternative remedies for attorney misconduct may not fully compensate the party defamed and may have other shortcomings. *See* Hayden, *supra* note 6, at 1037–42 (arguing, *inter alia*, that existing remedies for attorney abuse of the judicial proceedings privilege are not adequate to deter wrongdoing or compensate the wronged plaintiff). Nonetheless, the risk of punishment for the errant lawyer is real enough to require that lawyer to beware.

### III.

We have concluded that FTL and Enright are absolutely immune from being sued for defamation on the basis of the allegations in Hemispherx's complaint. We therefore reverse the trial court's denial of appellants' motion to dismiss, and remand this case for further proceedings consistent with our opinion.

*So ordered.*

of facts can be envisioned that would support

Hemispherx's claim.