**LaSHAWN A., By her next friend, Evelyn MOORE, et al., Appellees,**

v.

**Marion S. BARRY, Jr., Mayor, As Mayor of the District of Columbia, et al., Appellants.**

Nos. 94–7227, 94–7251, 95–7141, 95–7180, 95–7215, 96–7002 and 96–7234.

United States Court of Appeals, District of Columbia Circuit.

Argued March 17, 1998.

Decided June 2, 1998.

Lutz Alexander Prager, Assistant Deputy Corporation Counsel, argued the cause for appellants, with whom John M. Ferren, Corporation Counsel, Charles L. Reischel, Deputy Corporation Counsel, and Donna M. Murasky, Assistant Corporation Counsel, were on the briefs.

Marcia Robinson Lowry argued the cause for appellees, with whom Craig R. Levine and Arthur B. Spitzer were on the brief.

Before: WALD, SILBERMAN, and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

The Mayor of the District of Columbia and other District government officials (collectively, the District), challenge seven orders

issued by the district court related to its appointment of receivers to manage the District's child welfare system. The focus of their challenge is an order which empowers the general receiver to disregard District law to the extent that it unreasonably interferes with the discharge of her responsibilities. Because that order is too broad, we remand it to the district court. The balance of the appeals are moot.

## I.

Nine years ago, appellees filed this case on behalf of two groups of District children: (1) those in the District's foster care system and (2) those known to the District to be in danger of abuse or neglect. Seeking injunctive relief, they alleged widespread violations of these children's rights under the Constitution as well as various federal and District statutes. Following a lengthy trial, the district court, in 1991, concluded that the evidence presented in the case was "nothing less than outrageous" and that "[t]he District's dereliction of its responsibilities to the children in its custody [was] a travesty." *LaShawn A. v. Dixon*, 762 F.Supp. 959, 998 (D.D.C.1991). The court determined that, due to inept management and the indifference of the mayor's administration, "the District had failed to comply with reasonable professional standards in almost every area of its child welfare system." *Id.* at 997. With respect to children outside of the foster care system, the District failed to investigate reports of abuse or neglect in a timely manner or provide needed services. *Id.* at 989. And once children entered the foster care system, it did not place them appropriately, monitor their care, or adequately ensure permanent homes. As a result, the District failed to protect the children in its custody from physical, emotional, and psychological harm. *Id.* at 996.

The court held District officials liable under 42 U.S.C. § 1983 (1988) for both constitutional and federal statutory violations. It concluded that the District had deprived children in its foster care system of their due process rights under the Fifth Amendment, and that the District had abridged both groups of children's rights under two statutes: the Adoption Assistance and Child Welfare Act of 1980, 42 U.S.C. §§ 620–27 and §§ 670–79 (1988), and the Child Abuse Prevention and Treatment Act, 42 U.S.C. §§ 5101–5106 (1988). It further determined that the District had violated various local statutes and regulations that conferred constitutionally protected liberty interests[1] whose deprivation, without due process, violated § 1983.

The parties agreed, after lengthy negotiations, to an 84–page remedial consent decree approved by the district court which regulated every aspect of the District's child neglect and foster care system. The District, however, expressly reserved the right to appeal the district court's judgment of liability; to the extent that any part of the district court's opinion was vacated on appeal, the portions of the remedial order directly based on that part of the opinion would become "null and void."

The District appealed, attacking the constitutional and federal statutory basis of the district court's judgment. We noted, however, that the District of Columbia's statutory scheme for "the protection and care of foster children, and children reported to be abused or neglected [was] equally as comprehensive as that provided by the federal statutes...." *LaShawn A. v. Kelly*, 990 F.2d 1319, 1324 (D.C.Cir.1993) ("*LaShawn I*"). While the district court had concluded that the local statutes in question created liberty interests, the deprivation of which was actionable under § 1983, we held that District statutes themselves created "a private cause of action for children in foster care and for children reported to have been abused or neglected but not yet in the District's custody." *Id.* at 1325. As the district court's judgment appeared to be independently supportable by local law, we circumvented the constitutional and federal statutory questions and directed the district court "to fashion an equally com-

---

1. The pertinent District laws were the Prevention of Child Abuse and Neglect Act of 1977, D.C.Code Ann. §§ 2–1351 to –1357, §§ 6–2101 to –2107, §§ 6–2121 to –2127, and §§ 16–2351 to –2365 (1991); the Youth Residential Facilities Licensure Act of 1986, D.C.Code §§ 3–801 to – 808 (1991); and the Child and Family Services Division Manual of Operations (September 1985).

prehensive order based entirely on District of Columbia law, if possible." *Id.* at 1326. If the district court determined, on remand, that certain portions of the consent decree depended entirely on a federal statute, we instructed it to consider the impact of the Supreme Court's intervening decision in *Suter v. Artist M.*, 503 U.S. 347, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992)[2] before it included such provisions in a revised remedial order.

The district court simply deleted all references to federal law and readopted the consent decree. As for the District's concern that the remedy exceeded the mandates of local law, the court justified the decree as a "necessary and appropriate use of its equitable authority" to cure widespread violations of District law. *LaShawn A. v. Kelly*, Civ. No. 89–1754 (D.D.C. filed Jan. 27, 1994) (order adopting modified remedial order). And the district court clarified, in accordance with *LaShawn I*, that federal law was "not the basis of the consent decree." *LaShawn A. v. Kelly*, Civ. No. 89–1754 (D.D.C. filed Nov. 12, 1993) (order directing plaintiffs to propose modified remedial order).

The District once again appealed, contending, *inter alia*, that the modified remedial order was not solely based on local law as required by *LaShawn I* and that the entire order should be declared "null and void" under the terms of the parties' initial agreement. Again sidestepping, a divided panel remanded the case to the district court to reexamine the validity of the federal claims and its exercise of pendent jurisdiction over the local law claims under the second step of the test set forth in *United Mine Workers v. Gibbs*, 383 U.S. 715, 726–27, 86 S.Ct. 1130, 1139–40, 16 L.Ed.2d 218 (1966). *LaShawn A. v. Barry*, 69 F.3d 556 (D.C.Cir.1995) ("*LaShawn II*"). Sitting *en banc*, however, we held that the law-of-the-case and law-of-the-circuit doctrines prevented us from revisiting the *LaShawn I* panel's implicit conclusion

that the exercise of pendent jurisdiction in this case was appropriate under *Gibbs* step two. *LaShawn A. v. Barry*, 87 F.3d 1389 (D.C.Cir.1996) (en banc). After remitting the case to the *LaShawn II* panel to consider the issues raised by the District in its appeal, we affirmed the district court, holding that the decree did not extend beyond District law any more than it extended beyond federal law and that "the substitution of District law alone as the basis of the decree, in place of reliance on federal plus District law, did not materially undermine the District's consent." *LaShawn A. v. Barry*, No. 94–7044, 1996 WL 679301 (D.C.Cir. Oct. 30, 1996).

In the meantime, plaintiffs and the district court became frustrated with the District's recalcitrance in implementing the consent decree. On November 23, 1994, more than three years after the entry of the initial remedial order, the district court appointed three limited receivers to manage the areas of protective services, resource development, and corrective action. These receivers soon reported that their efforts to implement the remedial order were severely hampered by an array of obstacles, including the departure of staff due to budgetary constraints. They complained that the child welfare bureaucracy was suffering from a "severe level of dysfunction" and concluded that the scope of the limited receiverships was insufficient to implement the remedial order. At about the same time, the District government confronted a fiscal crisis. In early 1995, the D.C. Council mandated salary reductions and furloughs for District government employees in an effort to stem the flow of red ink. The district court, concerned that this attempt to cut costs would seriously undermine the receivers' efforts to implement the consent decree, ordered the adoption of the limited receivers' work plans which provided that "[a]ll Family Administrative staff required by

---

2. In *Suter*, the Court held that a single provision of the Adoption Assistance and Child Welfare Act of 1980, 42 U.S.C. § 671(a)(15), requiring a state to have a plan providing that "reasonable efforts" will be made to prevent a child from being removed from his home, and once removed to reunify the child with his family, imposed only generalized duties on the states and thus created neither a private right of action nor an enforceable right under § 1983. *Suter*, 503 U.S. at 363–

64, 112 S.Ct. at 1370. Although the Court's holding only reached that single provision of the Adoption Act, its analysis implicated the provisions of both federal statutes at issue in this case, which parallel the structure of 42 U.S.C. § 671(a)(15). *See Doe v. District of Columbia*, 93 F.3d 861, 866 (D.C.Cir.1996) (noting similarity between Adoption Act and Child Abuse Prevention and Treatment Act).

the *LaShawn* Remedial Order shall be exempt from staff layoffs, furloughs, salary reductions or other similar measures which may be instituted to manage the overall District budget deficit." *See LaShawn A. v. Kelly,* Civ. No. 89–1754 (D.D.C. filed Mar. 29, 1995).

A couple of months later, on May 22, 1995, the district court found appellants in contempt and placed the child welfare system into general receivership. The district judge had become troubled by the limited receivers' reports and discouraged by a 32–page list of more than 130 areas in which the District had missed deadlines or was in noncompliance with the remedial order, *LaShawn A. v. Kelly,* 887 F.Supp. 297 (D.D.C. 1995). In response to the District's argument that a *federal* court should not institute a general receivership to remedy violations of *local* law, the district court referred back to its original 1991 opinion finding violations of federal law. To the extent that our *LaShawn I* opinion required it to address the impact of the Supreme Court's *Suter* opinion before reviving the federal claims, the district court asserted, in a footnote, that *Suter* had been "at least partially overturned" by intervening legislation. *LaShawn A.,* 887 F.Supp. at 315 n. 125. In the same opinion, the district court also denied appellants' motion for reconsideration of its earlier order exempting child welfare staff from pay cuts and furloughs. *Id.* at 316.

On August 24, 1995, the district court outlined the general receiver's (Receiver's) responsibilities and powers, which incorporated all of the authority previously given to the limited receivers. In its most expansive grant of authority, the district court, over appellants' vigorous objection, ordered that:

> the Receiver will make reasonable efforts to exercise its authority in cooperation with District of Columbia officials and in a manner consistent with local law whenever possible. *However, to the degree that local law governing lines of authority,* budgeting, governmental structure and organization, procurement, and personnel unreasonably interfere with the Receiver's discharge of its responsibilities, local law is superseded by the Receiver's authority.

*LaShawn A. v. Barry,* Civ. No. 89–1754 (D.D.C. filed Aug. 24, 1995) (general receivership order) (emphasis added).[3] The parties dispute whether the Receiver, in any instance, has transgressed local law, but no such violations appear in the district court record below.

Although appellants initially challenged seven district court orders, they concede that three of their appeals are now moot.[4] A fourth, objecting to powers given the limited receivers, need not be evaluated separately as their general powers have been merged into the power of the Receiver. We, therefore, are left to consider three orders: the March 29, 1995 order exempting Family Services Administrative Staff from salary reductions and furloughs, the May 22, 1995 order denying appellants' motion for reconsideration of the March order, and the August 24, 1995 order directing the Receiver to disregard District law when it "unreasonably interfere[s] with the Receiver's discharge of [her] responsibilities."

## II.

Appellees argue that challenges to the March 29, 1995 and May 22, 1995 orders are also moot. Appellants admit that the furlough and salary reduction legislation adopted to deal with the District's fiscal crisis has expired, therefore appellees contend that no live controversy exists with respect to the orders which permitted the Receiver to override these laws. The District responds that these orders fall within the "capable of repetition yet evading review" exception to mootness doctrine. For this exception to apply, the District must show: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or

---

3. In a partial modification of its order, the district court later directed the Receiver to "contract and procure goods and services consistent with the District's existing procurement law and procedures." *LaShawn A. v. Barry,* Civ. No. 89–1754 (D.D.C. filed Dec. 8, 1995) (order transferring child welfare funds to Receiver's bank account).

4. These involve challenges to: (1) a June 26, 1995 order setting deadlines to execute contracts for creation of a management information system; (2) the December 8, 1995 order transferring the Initial Operating Fund to the general receiver; and (3) a September 26, 1996 order denying the District's motion to stay the May 1995 receivership order.

expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again." *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350 (1975). Assuming *arguendo* that the temporary nature of the salary reduction and furlough measures allows the District to meet its burden on the first prong, it cannot satisfy its obligation with respect to the second. Although the District claims that temporary pay cuts and furloughs may be instituted again in the event of future budget deficits, it offers no support for the proposition that the District again will run budget deficits during the lifetime of the receivership,[5] let alone for its implicit claim that the congressionally created Control Board, despite the existence of the consent decree, would approve of pay cuts and furloughs so severe that the Receiver would find it necessary to exempt child welfare personnel from such measures. The District simply has not demonstrated that there is a reasonable expectation a similar controversy will recur, and we therefore agree that the appeals of these two orders are moot.[6]

■ What remains is the gravamen of the District's case: its complaint that the district court abused its discretion in its August 24, 1995 order by authorizing the Receiver to violate District law in several areas to the extent local law "unreasonably interfere[d] with the Receiver's discharge of [her] responsibilities." The District claims that because the district court is enforcing a decree based exclusively on local law, it is essentially in the same position as a local court. And like all other institutions of government, local courts are subject to valid restrictions imposed by local legislatures. The district court, therefore, may not remedy one violation of local law by permitting other violations of local law.

We are not persuaded by appellees' suggestion that, since the District has not pointed to any specific instance in which the Receiver has transgressed local law, the district court's order should be affirmed if we can imagine any set of circumstances in which the district court would be justified in authorizing the Receiver to override local law. We must review whether the broad scope of authority granted to the Receiver under the present circumstances is proper, not whether a more narrowly drawn authorization under a hypothetical set of future conditions might be within the district court's discretion.

■ In that regard, we admit that while avoiding the federal statutory and constitutional claims seemed prudent at the time, our prior dispositions have led us into a most unusual predicament. We have before us a federal district court order that purports to override local law in order to implement a consent decree based solely on local law. The case appears to be unique; we cannot find any other instance where we or one of our sister circuits have dealt with an analogous dispute. This is partially because the Eleventh Amendment denies federal courts jurisdiction to order state officials to conform their conduct to state law. *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 117–21, 104 S.Ct. 900, 917–19, 79 L.Ed.2d 67 (1984).[7] As support for the district court's

---

5. We note that the District's own budget projections currently forecast budget surpluses in the range of $150 million to $200 million for the next five years. David A. Vise, *D.C. Fiscal Future Glows; Rosy Outlook May Mean Tax Cuts,* WASH POST, Mar. 8, 1998, at A1.

6. The District's alternative claim, that it is entitled to reimbursement of the funds spent complying with the disputed orders, does not save the controversy. By including this contention as a throwaway line in its reply brief, the District has not satisfied our requirement that parties' arguments be sufficiently developed lest waived. In any event, the District does not suggest from whom this reimbursement would come or on what basis it would be made. The disputed money has already been paid out in salary to District employees, and we do not see how the district court could order its return. We think it remarkable to suggest that the Receiver, seeking to implement the terms of the consent decree, could, at this point, be required to transfer millions of dollars from the child welfare budget to other parts of the District government.

7. The term "state" in the Eleventh Amendment also has been interpreted to include Puerto Rico, *see De Leon Lopez v. Corporacion Insular de Seguros,* 931 F.2d 116, 121 (1st Cir.1991), but not the District of Columbia. *See LaShawn A. v. Barry,* 87 F.3d 1389, 1394 n. 4 (D.C.Cir.1996) (en banc). Nevertheless, we continue to operate under the assumption that District law under *Gibbs* should be treated as state law, rather than inferior federal law. *Cf. id.* at 1398 (Silberman, J., concurring).

order, appellees point to several circuits which have held that federal courts possess the power to override local law to enforce consent decrees in instances where there have been no findings or admissions of federal liability. *See, e.g., Stone v. City and County of San Francisco,* 968 F.2d 850 (9th Cir.1992); *Badgley v. Santacroce,* 800 F.2d 33 (2d Cir.1986); *Brown v. Neeb,* 644 F.2d 551 (6th Cir.1981). Once a local government consents to a remedial order in a case where violations of federal rights have been alleged, they argue, a federal court obtains the authority to override conflicting local law in order to enforce the decree, regardless of whether there are any formal findings or admissions of liability on federal grounds. As the Second Circuit has stated:

> The respect due the federal judgment is not lessened because the judgment was entered by consent. The plaintiffs' suit alleged a denial of their constitutional rights. When the defendants chose to consent to a judgment, rather than have the District Court adjudicate the merits of the plaintiffs' claims, the result was a fully enforceable federal judgment that overrides any conflicting state law or state court order.

*Badgley,* 800 F.2d at 38. There are crucial differences, however, between the cases cited by appellees and this one. Unlike those cases, it cannot be said that the District here implicitly conceded some basis for federal liability; the District expressly reserved its right to appeal its liability under federal law not withstanding its entry into the consent decree. And more important, in fashioning its consent decree, we directed the district court to base its remedial order only on local law, to the extent possible. In response, the district court *deleted* all references to federal law from the consent decree.

■ Absent any recognized or implicitly conceded federal basis to the decree, we simply do not see how the district court has the power to authorize the Receiver to disregard District law. While it is true that a consent decree involves an exercise of federal power, a federal court enforcing a state-created right becomes, "in effect, only another court of the State" and cannot employ a remedy that is not available in state court. *See Guaranty Trust Co. v. York,* 326 U.S. 99,

108–09, 65 S.Ct. 1464, 1469–70, 89 L.Ed. 2079 (1945); *see also* 28 U.S.C. § 1652 (1994). And although *Guaranty Trust* was a diversity-jurisdiction case amplifying the principles of *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), pendent jurisdiction jurisprudence is based on the same principles. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Allowing different remedies in state law cases heard in federal courts on pendent jurisdiction would undermine the "twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws." *Hanna v. Plumer,* 380 U.S. 460, 468, 85 S.Ct. 1136, 1142, 14 L.Ed.2d 8 (1965).

■ The courts of a jurisdiction cannot authorize violations of that jurisdiction's laws, unless pursuant to the command of a higher law. It is a fundamental tenet of separation-of-powers doctrine that a court's enforcement powers are restricted by the dictates of the legislature. As we have observed, a district court's remedial powers "are necessarily limited by a clear and valid legislative command counseling against the contemplated judicial action." *Antone v. Block,* 661 F.2d 230, 235 (D.C.Cir.1981). The Supreme Court has reaffirmed this basic principle, noting that " '[a] Court of equity cannot, by avowing that there is a right but no remedy known to the law, create a remedy in violation of the law....' " *INS v. Pangilinan,* 486 U.S. 875, 883, 108 S.Ct. 2210, 2216, 100 L.Ed.2d 882 (1988) (quoting *Rees v. Watertown,* 86 U.S.(19 Wall.) 107, 122, 22 L.Ed. 72 (1873)); *see also Hedges v. Dixon County,* 150 U.S. 182, 192, 14 S.Ct. 71, 74, 37 L.Ed. 1044 (1893) ("[c]ourts of equity can no more disregard statutory and constitutional requirements and provisions than can courts of law.").

■ The scope of the Receiver's authority is quite extraordinary. Even were the consent decree explicitly based on federal law, we would be hesitant to affirm. To be sure, a federal court has broad equitable powers, *see Swann v. Charlotte–Mecklenburg Bd. of Educ.,* 402 U.S. 1, 15, 91 S.Ct. 1267, 1275–76, 28 L.Ed.2d 554 (1971), and may, in certain instances, override state or local law for the purpose of enforcing a decree designed to remedy violations of federal law. *See, e.g.,*

*Missouri v. Jenkins,* 495 U.S. 33, 52–53, 110 S.Ct. 1651, 1663–64, 109 L.Ed.2d 31 (1990); *North Carolina State Bd. of Educ. v. Swann,* 402 U.S. 43, 45, 91 S.Ct. 1284, 1286, 28 L.Ed.2d 586 (1971). But in this case, the district court has given the Receiver an open-ended authorization to disregard numerous important sections of District law. We think considerable tension exists between its order and the Supreme Court's admonition that in employing their broad equitable powers, federal courts must "exercise '[t]he least possible power adequate to the end proposed.'" *Spallone v. United States,* 493 U.S. 265, 280, 110 S.Ct. 625, 634, 107 L.Ed.2d 644 (1990) (quoting *Anderson v. Dunn,* 19 U.S.(6 Wheat.) 204, 231, 5 L.Ed. 242 (1821)).

■ Our review of a district court's choice of equitable remedies is "highly contextual and fact dependent." *Stone v. City and County of San Francisco,* 968 F.2d at 861. But "the remedy should begin with what is absolutely necessary. If [those] measures later prove ineffective, more stringent ones should be considered." *Ruiz v. Estelle,* 679 F.2d 1115, 1145–46 (5th Cir.1982), *vacated in part on other grounds,* 688 F.2d 266 (5th Cir.1982). We sympathize with the district court's frustration with the pace of the District's progress in complying with the remedial order and its desire to empower the Receiver to accomplish her goals as quickly as possible. Disregarding local law, however, is a grave step and should not be taken unless absolutely necessary. In *Stone v. City and County of San Francisco,* the Ninth Circuit considered a case where a district court had authorized a local sheriff to override state laws by ordering the early release of certain inmates from an overcrowded jail. 968 F.2d at 850. While the court held open the possibility that such an authorization might be upheld under certain circumstances, it noted that "the district court did not make any findings that other alternatives were inadequate before it authorized the Sheriff to override applicable state laws." *Id.* at 864. It therefore vacated the relevant part of the district court's order.

The equitable remedy here is even more troubling than the one at issue in *Stone.* There, the district court authorized a local government official, the Sheriff, to override state law in only one narrow field. In this case, the Receiver, a court-appointed official, has been authorized to disregard District law in a whole host of areas. While it is true that the Receiver is required to conclude that relevant local laws "unreasonably interfere" with her ability to discharge her responsibilities, the district court has never concluded that compliance with District law, as a general matter, precludes the Receiver from enforcing the consent decree. And even were it to make such a finding, we believe that the district court needs to consider each contemplated violation of District law on a case-by-case basis. Should a situation arise in which it is alleged that desired action by the Receiver violates local law, the District should bring this to the attention of the district court and bear the burden of making the case that a conflict exists. If the district court concludes that there is indeed such a conflict, it should only authorize the Receiver to violate local law in those instances where, considering other alternatives, it specifically concludes an override is necessary to enforce the terms of the consent decree.

In such cases, the district court further *must* consider the status of the federal statutory claims. If the district court had wished, when revising the consent decree in light of *LaShawn I,* to retain any provision solely based on federal law, we instructed it to reexamine the relevant federal claim in light of the Supreme Court's *Suter* opinion. Rather than perform such a reexamination, however, the district court explicitly disclaimed any federal basis for the consent decree. The district court's 1995 attempt to revive the federal law claims in its opinion placing the child welfare system into receivership was inadequate. Noting the requirements of our *LaShawn I* mandate, the district court, speaking generally of the federal statutory violations, declared that the Supreme Court's *Suter* decision "has been at least *partially* overturned by congressional action." *LaShawn A.,* 887 F.Supp. at 315 n. 125 (emphasis added). We think this treatment of the matter is insufficient; the district court must instead analyze the federal claims separately in light of the recent legislation[8] and Su-

---

8. The relevant statutory amendment reads:

In an action brought to enforce a provision of

preme Court cases, including *Suter* and *Blessing v. Freestone*, 520 U.S. 329, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997), in order to determine whether any survive. A mere observation that *Suter* may no longer be relevant due to congressional action does not comply with our *LaShawn I* mandate.

Should the district court determine, in accordance with the framework laid out in this opinion, that empowering the Receiver to violate District law in a specific instance is warranted, it must identify the specific federal law ground it is using as the justification for the Receiver's authority to transcend local law. As the Seventh Circuit noted in *Kasper v. Board of Election Commissioners*, 814 F.2d 332, 342 (7th Cir.1987), "An alteration of the [state's] statutory scheme ... depends on an exercise of federal power, *which in turn depends on a violation of federal law*." (emphasis added). Since reintroducing federal claims into the case would constitute a modification of the basis of the consent decree, the District would, of course, be able to contest such a modification on appeal.

\* \* \* \*

As the district court's August 24, 1995 order raises significant separation of powers concerns, we remand with instructions to consider those instances in which desired action by the Receiver conflicts with local law in accordance with the procedures spelled out in this opinion. We hold the District's other appeals to be moot.

*So ordered.*

this chapter, such provision is not to be deemed unenforceable because of its inclusion in a section of this chapter requiring a State plan or specifying the required contents of a State plan. This section is not intended to limit or expand the grounds for determining the availability of private actions to enforce State plan requirements other than by overturning any such grounds applied in *Suter v. Artist M.*, 503 U.S. 347, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992), but not applied in prior *Supreme Court* decisions respecting such enforceability: *Provided, however*, That this section is not intended to alter the holding in *Suter v. Artist M.* that section 671(a)(5) of this title is not enforceable in a private right of action.

42 U.S.C. § 1320a–2 (amended Oct. 20, 1994); *id.* at § 1320a–10 (amended Oct. 31, 1994) (identical provision).