**DISTRICT OF COLUMBIA,**
et al., Appellants

v.

**Petra L. PIZZULLI, Personal Repre-
sentative of the Estate of Pablo
Ruiz–Salomon, Appellee.**

No. 03–CV–1036.

District of Columbia Court of Appeals.

Argued Nov. 18, 2004.
Decided Feb. 8, 2007.

William J. Earl, Assistant Attorney General for the District of Columbia, with whom Robert J. Spagnoletti, Attorney General at the time the brief was filed, and Edward E. Schwab, Deputy Attorney General, were on the brief, for appellants.

Neil A. Goldfarb, with whom Carol Elder Bruce, Washington, DC and Brian C. Quinn, were on the brief, for appellee.

Before REID, Associate Judge, and TERRY and SCHWELB, Senior Judges.*

TERRY, Senior Judge:

This is an interlocutory appeal from an order of the Superior Court denying the pre-trial motion of the District of Columbia (and others) to dismiss this case under Super. Ct. Civ. R. 12(b)(6) for failure to state a claim upon which relief could be granted. We affirm the denial of the motion to dismiss.

I

A. *The Receivership*

This appeal arises from a lawsuit that challenged the decision of a judicially ap-

---

* Judge Terry was an Associate Judge of the court at the time of argument. His status changed to Senior Judge on February 1, 2006.

Judge Schwelb was an Associate Judge of the court at the time of argument. His status changed to Senior Judge on June 24, 2006.

pointed receiver to terminate an employee of the District of Columbia's Child and Family Services Agency ("CFSA") while the CFSA was in receivership pursuant to what was commonly known as the *La-Shawn* order.[1]

In its order establishing the receivership, issued on August 24, 1995, the United States District Court granted the receiver "all necessary authority to carry out its responsibilities, including but not limited to any and all authority previously vested in the Office of the Mayor or any other executive branch of the government of the District of Columbia." The appointed receiver was vested with "direct control and line supervisory authority over all activities and tasks relating to members of the *LaShawn* class," including "full authority to ... designate and assign all necessary administrative, direct service, and support staff, including hiring personnel directly and all other personnel actions deemed necessary by the Receiver to carry out the Court's [remedial and implementation] orders." The CFSA remained in receivership for six years, until 2001.

### B. *Proceedings in the Superior Court*

Pablo Ruiz–Salomon was a social worker employed at the CFSA from 1992 to 2001.[2]

From approximately 1995 to 2000, he was an outspoken critic of the CFSA and its ongoing failure to comply with the *La-Shawn* remedial order. During this period, he also repeatedly complained to the CFSA management about workplace hostility toward his sexual orientation. The record does not indicate that the CFSA took any constructive action in response to his complaints. In April and May 2000, Mr. Ruiz–Salomon sought psychiatric treatment in a sexual addiction recovery program at Del Amo Hospital, a medical facility in California. Sometime around June 2000, without Mr. Ruiz–Salomon's authorization or knowledge, the hospital released all of his confidential medical records to the CFSA's human resources department. These records contained a note stating that the "patient ... is here due to his sexual offense two years ago by molesting a 14–year old autistic girl." It is undisputed that this statement actually pertained to another hospital patient and was mistakenly included in Mr. Ruiz–Salomon's file.

In May 2002, Mr. Ruiz–Salomon filed a complaint in the Superior Court against several named parties, including former judicial receivers appointed by the federal court in the *LaShawn* case. He alleged in

---

1. The *LaShawn* litigation, which began in April 1991, was a federal class action against the District of Columbia and some of its officials on behalf of certain abused and neglected children in the city's child welfare system. The United States District Court concluded that the District had mismanaged its supervisory operations and deprived the children of various rights under federal and local statutes. *See generally LaShawn A. v. Barry*, 330 U.S.App. D.C. 204, 144 F.3d 847 (1998); *La-Shawn A. v. Kelly*, 887 F.Supp. 297 (D.D.C. 1995); *LaShawn A. v. Dixon*, 762 F.Supp. 959 (D.D.C.1991). On January 27, 1994, the District Court issued a remedial order instructing the District to improve its management of the child welfare system. *See LaShawn A. v. Kelly*, 887 F.Supp. at 298; *see also LaShawn A. v.*

*Kelly*, 301 U.S.App. D.C. 49, 56, 990 F.2d 1319, 1326 (1993), *cert. denied*, 510 U.S. 1044, 114 S.Ct. 691, 126 L.Ed.2d 659 (1994) (affirming judgment in favor of plaintiff class based on local statutory law). On May 22, 1995, the court held that the District's efforts to comply were inadequate and warranted the establishment of a full receivership to operate the District's child welfare system, including the CFSA. *See LaShawn A. v. Kelly*, 887 F.Supp. at 316.

2. Mr. Ruiz–Salomon died while this case was pending. In accordance with Rule 43(a) of the Rules of this court, Petra L. Pizzulli, the personal representative of his estate, has been substituted as the appellee in this appeal.

his complaint that the false statement in his medical file was improperly circulated throughout the CFSA and eventually triggered the termination of his employment with the agency on June 1, 2001. He asserted that he had been wrongfully discharged because of anti-homosexual bias in the workplace and political retaliation for his vocal criticism of the receivers' efforts to comply with the *LaShawn* order.[3] Over the next year, the complaint was twice amended to delete certain individuals as named defendants and to add Del Amo Hospital as a defendant. In its final form, the complaint named as defendants the District of Columbia; the CFSA; Olivia Golden, the director of the CFSA; four CFSA managerial employees; and Del Amo Hospital.

The District of Columbia and its individual employees, along with the CFSA (collectively "the District"), moved to dismiss the complaint under Rule 12(b)(6), contending *inter alia* that the CFSA and its former managerial employees were protected by the same absolute judicial immunity that shields receivers from liability for acts done within the scope of their official duties. The motion also argued that the District did not have supervisory control over the receivership and that the complaint did not specifically allege Ms. Gold-

en's involvement in the events underlying this suit. The trial court denied the motion in a brief order, without stating its reasons, and the District noted this appeal.[4]

## II

The parties agree that the fundamental issue on appeal is whether the individual defendants are entitled to judicial immunity as former managerial employees of the receiver. Beyond this, the District also contends that this court has jurisdiction to review its substantive claim that the District and the former CFSA director are not liable for management decisions made by the receiver during the CFSA's period of receivership.

■ Since the District is appealing from an order denying its motion to dismiss under Rule 12(b)(6),[5] the factual allegations contained in Mr. Ruiz–Salomon's complaint, and any reasonable inferences from them, are deemed to be true. *See, e.g., Schiff v. American Ass'n of Retired Persons*, 697 A.2d 1193, 1196 (D.C.1997). Dismissal under Rule 12(b)(6) is proper only when the moving party can show beyond doubt that the non-moving party is unable to prove any set of facts to support his claim. *E.g., Cauman v. George Wash-*

3. The complaint included claims of negligence, intentional and negligent infliction of emotional distress, defamation, invasion of privacy (false light and publication), and violations of D.C.Code § 1–615.51 *et seq.* (2001) (commonly known as the "Whistleblower Act"). Mr. Ruiz–Salomon alleged several retaliatory actions, including the undermining of his supervisory role, removal from all interaction with non-managerial CFSA employees, transfer to a position without any substantive assignments commensurate with his experience and supervisory status, conversion from career civil service to management supervisory service lacking civil service protections, and wrongful termination.

4. Del Amo Hospital is not a party to this appeal.

5. In general, the denial of a motion to dismiss is not a final order and is therefore not appealable. The Supreme Court and this court, however, have held that when the motion is based on a claim of immunity, its denial is appealable under an exception to the rule of finality known as the collateral order doctrine, which we shall discuss in part II–A of this opinion. *See, e.g., Mitchell v. Forsyth*, 472 U.S. 511, 525, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *Stein v. United States*, 532 A.2d 641 (D.C.1987), *cert. denied*, 485 U.S. 1010, 108 S.Ct. 1477, 99 L.Ed.2d 705 (1988).

*ington University,* 630 A.2d 1104, 1105 (1993); *see Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### A. *Appellate Jurisdiction*

■ Because this court has authority (with limited exceptions) to review only "final orders and judgments" of the Superior Court, any lack of finality is a bar to appellate review. D.C.Code § 11–721(a)(1) (2001); *see Rolinski v. Lewis,* 828 A.2d 739, 745–746 (D.C.2003) (en banc), *Dyer v. William S. Bergman & Associates,* 635 A.2d 1285, 1287 (D.C.1993). For this reason, an order denying a motion to dismiss—typically a non-final order—is not immediately appealable. *Heard v. Johnson,* 810 A.2d 871, 876 (D.C.2002). A narrow exception to the finality requirement, however, exists under what is known as the collateral order doctrine, established by the Supreme Court in *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). *See Heard,* 810 A.2d at 877; *Stein v. United States,* 532 A.2d 641, 643 (D.C.1987), *cert. denied,* 485 U.S. 1010, 108 S.Ct. 1477, 99 L.Ed.2d 705 (1988). Accordingly, "a ruling such as an order denying a motion to dismiss may be appealable [as a collateral order] 'if it has a final and irreparable effect on the important rights of the parties.'" *Heard,* 810 A.2d at 877, quoting *Bible Way Church of Our Lord Jesus Christ of the Apostolic Faith v. Beards,* 680 A.2d 419, 425 (D.C.1996).

■ To qualify for immediate appellate review under this narrow exception, a ruling on a motion to dismiss must satisfy three conditions:

First, it must conclusively determine the undisputed question [of law]; second, it must resolve an important issue completely separate from the merits of the action; third, it must be effectively un-reviewable on appeal from a final judgment.

*Flanagan v. United States,* 465 U.S. 259, 265, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984) (citation and internal quotation marks omitted); *accord, e.g., Finkelstein, Thompson & Loughran v. Hemispherx Biopharma, Inc.,* 774 A.2d 332, 339–340 (D.C.2001); *Bible Way Church,* 680 A.2d at 425–426. An order denying a motion to dismiss that "asserts an immunity from law suits is the type of ruling 'commonly found to meet the requirements of the collateral order doctrine and thus be immediately appealable, so long as the ruling turns on an issue of law rather than on a factual dispute.'" *Heard,* 810 A.2d at 877 (citations omitted).

The Supreme Court and this court have both recognized the rejection of a claim of immunity as satisfying the collateral order doctrine. "This court, for example, has held that a defendant church may appeal the denial of a motion to dismiss based on a claim of immunity from suit under the First Amendment." *Finkelstein,* 774 A.2d at 340 (citations omitted). In *Heard,* a more recent decision which the District cites in support of its appeal, we similarly held that an order denying "[a] claim of immunity from suit under the First Amendment" satisfies the collateral order doctrine and is thus immediately appealable. 810 A.2d at 877. In defamation actions, we have agreed with other courts which likewise have held "that the denial of a motion to dismiss ... based on a claim of absolute privilege under the common law ... is immediately appealable" as a collateral order. *Finkelstein,* 774 A.2d at 340 (citations omitted). In *Finkelstein* itself we held that an attorney and his law firm could appeal from the denial of a motion to dismiss based on their claim of absolute immunity under what is known as the "judicial proceedings" privilege described in the RESTATEMENT (SECOND) OF TORTS § 586 (1977). *See Finkelstein,* 774

A.2d at 340. And in *Stein*, a criminal case in which an employee of a United States Senator was charged with carrying a pistol without a license,[6] we held that we had jurisdiction—under the collateral order doctrine—to entertain his appeal from the denial of his motion to dismiss the criminal charges based on a claim of immunity. *Stein*, 532 A.2d at 644.

In light of these and similar precedents from both this court and the Supreme Court—most notably *Mitchell v. Forsyth*, *supra* note 5—we hold that we have jurisdiction to consider this appeal by the District under the collateral order doctrine.

## B. *The Merits*

■ We turn our attention, then, to the nature of the District's claim of immunity. The specific question before us is whether the individual defendants are entitled to immunity from suit as former managerial employees of court-appointed receivers who were themselves immune. As the District appears to concede in its brief, neither statute nor case law in this jurisdiction has explicitly recognized default immunity for employees of a government agency otherwise accountable to a judicial receiver. Consequently, we must examine cases sharing the factually similar predicate—although the actual basis for immunity in each instance may differ—of workplace subordinates seeking shelter from suit in an official's vested grant of immunity.

In *Doe v. McMillan*, 412 U.S. 306, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973), for example, the Supreme Court clarified "the scope of congressional immunity under the Speech or Debate Clause of the United States Constitution ... as well as the reach of official immunity in the legislative context." *Id.* at 307, 93 S.Ct. 2018. We need not revisit the concept of official immunity for members of Congress recognized in such cases as *Gravel v. United States*, 408 U.S. 606, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972), and only note that in *Doe* the Court reaffirmed the principle of granting absolute immunity from suit to congressional committee staff members and legislative employees when their "conduct ... would be a protected legislative act if performed by the Member himself." *Doe*, 412 U.S. at 312 n. 7, 93 S.Ct. 2018, quoting *Gravel*, 408 U.S. at 618, 92 S.Ct. 2614. More importantly, the decision in *Doe* also made clear that "everything a Member of Congress may regularly do is not a legislative act within the protection of the Speech or Debate Clause." *Doe*, 412 U.S. at 313, 93 S.Ct. 2018 (citation omitted). Accordingly, the Court held that the Speech or Debate Clause does not afford absolute immunity from suit "to persons who, with authorization from Congress, distribute materials which allegedly infringe upon the rights of individuals." *Id.* at 314, 93 S.Ct. 2018.

In *Doe* a group of parents brought an action against several members of Congress, their staff members, and two high-ranking officials of the Government Printing Office (GPO) for violating their children's privacy rights by publishing a congressional report containing identifiable information about the children's substandard performance as students in District of Columbia public schools. The Court held that the work undertaken to produce the report by a congressional committee and its staff members, as well as their investigators and consultants, was a protected "legislative act" entitled to absolute immunity. That immunity, however, did not

---

**6.** The defendant, who was employed by the Senator as a "security specialist" to accompany him on a trip to South America, had a license to carry a gun in California, but not in the District of Columbia. *See Stein*, 532 A.2d at 643 & n. 6.

extend to the GPO officials. Their participation in distributing the congressional report to the public was "beyond the reasonable bounds of the legislative task" because it was "not an essential part of the legislative process and [was] not part of that deliberative process 'by which Members participate in committee and House proceedings.'" *Id.* at 315, 93 S.Ct. 2018 (citing *Gravel*). To the extent that it is relevant to the present case, *Doe* effectively established limits on official immunity by clearly holding that not all subordinates are automatically entitled to share in the congressional lawmakers' constitutional immunity from suit—even when the subordinates' actions are "authorized by Congress." *Id.* at 314, 93 S.Ct. 2018.

■■■ The question of immunity for certain judicial actors—such as judges and receivers—is equally well-settled: they are entitled to absolute immunity from civil liability for acts committed within their judicial capacity if the particular act at issue is a "judicial act." *Stump v. Sparkman*, 435 U.S. 349, 355–356, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978);[7] *accord, e.g., Pierson v. Ray*, 386 U.S. 547, 553–554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Cunningham v. District of Columbia*, 584 A.2d 573, 576 (D.C.1990); *Capitol Terrace, Inc., v. Shannon & Luchs, Inc.*, 564 A.2d 49, 51 (1989) (immunity extended to receiver appointed to collect rent from tenants of apartment complex). Immunity has also been bestowed upon "other officers of government whose duties are related to the judicial process." *Barr v. Matteo*, 360 U.S. 564, 569, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959); *see, e.g., Stanton v. Chase*, 497 A.2d 1066, 1069 (D.C.1985) (immunity extended to Public Defender Service employee who recommended attorneys to the court for appointment in criminal cases); *McAllister v. District of Columbia*, 653 A.2d 849, 850 (D.C.1995) (immunity extended to courtroom clerk who negligently drafted criminal commitment order);[8] *Cunningham*, 584 A.2d at 573 (immunity extended to parole board and examining psychiatrist who assisted board in determining whether to release parolee); *Turner v. Barry*, 272 U.S.App. D.C. 377, 378, 856 F.2d 1539, 1540 (1988) (immunity extended to probation officer); *Simons v. Bellinger*, 207 U.S.App. D.C. 24, 30–32, 643 F.2d 774, 780–782 (1980) (immunity extended to members of court-appointed committee on unauthorized practice of law). Collectively, these cases illustrate the conditions under which judicial immunity may be granted to public officials other than judges. "First, [the officials'] activities must be integrally related to the judicial process; second, they must exercise discretion comparable to that exercised by a judge [or] their primary function [must be] to assist a judge or a court in the administration of justice." *Cunningham*, 584 A.2d at 576–577. Therefore, as long as the challenged action is within the scope of "judicial" duty, the subordinate official is entitled to judicial immunity "however erroneous the

---

7. "[W]hether an act by a judge is a 'judicial' one ... [depends on] the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and the expectations of the parties, *i.e.*, whether they dealt with the judge in his official capacity." *Stump*, 435 U.S. at 362, 98 S.Ct. 1099; *see Forrester v. White*, 484 U.S. 219, 227, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988) (drawing a distinction between "truly judicial acts" and "acts that simply happen to have been done by judges").

8. In *McAllister* the plaintiff was convicted of a criminal offense which "carried a maximum penalty of one year. However, on the Order which the judge later signed, the courtroom clerk recorded a sentence of 'time not to exceed five years.'" 653 A.2d at 850. This error was not discovered until the plaintiff had been in jail for almost three years.

act may have been, and however injurious in its consequences it may have proved to the plaintiff." *Id.* at 576, quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347, 20 L.Ed. 646 (1871).

Like members of a congressional staff, employees of receivers are not automatically entitled to judicial immunity. The United States District Court for the District of Columbia, for example, has held that a court-appointed receiver's employees are "twice-removed" agents with a "less compelling claim of quasi-judicial immunity" than the actual receiver because "it is more difficult to discern whether their acts are undertaken on behalf of the Court." *Fantasia v. Office of the Receiver of the Commission on Mental Health Services*, 2001 WL 34800013 at *4, 2001 U.S. Dist. Lexis 25858 at *12–13 (D.D.C. December 21, 2001). Consequently, as a threshold matter the court concluded, *inter alia*, that the immunity defense raised by the "agents of the receiver" could not be resolved on a Rule 12(b)(6) motion to dismiss. *Id.* at *4, 2001 U.S. Dist. Lexis 25858 at *12. Moreover, "in light of the governing principle not to extend absolute immunity 'any further than its justification would warrant,' " the court ruled that "the counts against [a contractor and one of its employees] will not be dismissed on immunity grounds at this stage of the proceedings." *Id.* at *5, 2001 U.S. Dist. Lexis 25858 at *14 (citing *Burns v. Reed*, 500 U.S. 478, 487, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991)).

Dismissal of the case at bar on immunity grounds would be equally inappropriate because—as the District concedes in its brief—the factual allegations against the CFSA's employees did not involve "judicial acts" but instead reflected managerial decisions that were predominantly employ-ment-related. Courts have generally held that workplace decisions regarding employment, even when made by a judge, are "administrative functions" not entitled to immunity. *See, e.g., Forrester v. White, supra* note 7, 484 U.S. at 227–228, 108 S.Ct. 538 (state court judge who demoted and later fired a court employee was acting in an administrative, not judicial, capacity). Given the Supreme Court's holding in *Forrester* that "personnel decisions made by judges, [which] are often crucial to the efficient operation of public institutions," do not give rise to absolute immunity, *id.* at 228, 108 S.Ct. 538, we would be hard-pressed at this early stage of the litigation to bestow immunity from liability on the twice-removed agents of the receiver for any personnel decisions they may have made.

Of course, the denial of the District's motion to dismiss does not foreclose the possibility that appellee's complaint may eventually prove to be without merit. We note that absolute immunity has been extended to receivers making personnel decisions when their actions specifically related to implementing the receivership order itself. *See Fantasia*, 2001 WL 34800013 at *4–5, 2001 U.S. Dist. Lexis 25858 at *11–12. However, since the "nature of the function performed, not the identity of the actor who performed it," guides our immunity analysis, *Forrester*, 484 U.S. at 229, 108 S.Ct. 538, we cannot overlook the fact that the complaint alleged workplace harassment and eventual termination because of anti-homosexual bias and because of the plaintiff's persistent criticism of the CFSA's compliance efforts with the *LaShawn* remedial order. Reviewing these allegations, as we must, in the light most favorable to sustaining the trial court's ruling, *see Schiff*, 697 A.2d at 1196, at this stage we must at least suppose that the

actions undertaken by the CFSA's managerial employees, several years after the receivership had gone into effect, may not have been meant to effectuate the remedial order.

But we need not engage in supposition in order to decide this appeal. Given the demanding standard of Rule 12(b)(6), we hold that the immunity issue in this case cannot be resolved on a motion to dismiss. Whether the CFSA's managerial employees were acting within the scope of their official duties as agents of the receiver is a question of fact, to be resolved by a judge or jury after "weigh[ing] the pertinent factors and discern[ing] where the appropriate balance of interests lies." *Moss v. Stockard*, 580 A.2d 1011, 1021 (D.C.1990); cf. *Johnson v. Weinberg*, 434 A.2d 404, 407 (D.C.1981) (directed verdict is appropriate only if "the probative facts are un-disputed"; otherwise "the wise course is for the trial judge to allow the case to go to the jury" (citations omitted)). At this stage, we conclude only that since the CFSA's managerial employees are not entitled to absolute immunity, dismissal would be improper, and since the District has not shown that appellee will be unable to prove any set of facts at trial to support her claims, dismissal under Rule 12(b)(6) would be unwarranted. *See Cauman*, 630 A.2d at 1105.[9]

## III

■ Beyond its claim of absolute immunity, the District has raised other issues which it asks us to decide in this interlocutory appeal. In particular, the District questions whether it may be held liable for acts taken by the CFSA employees during the receivership[10] and whether the CFSA

---

9. We do not, of course, foreclose the possibility of a motion for summary judgment, assuming that the District can establish that there are no issues of material fact. *See* Super. Ct. Civ. R. 56(c). We hold only that the CFSA employees, like the GPO officials in *Doe v. McMillan* or the receiver's employees in *Fantasia*, or even the judge in *Forrester*, are not entitled to immunity as a matter of law simply by virtue of their employment. Whether their claim of immunity is (or is not) viable will depend on specific facts yet to be established; at this juncture we simply do not know what those facts are.

10. The District admits in its brief that "the claim of entitlement to absolute immunity does not apply to the District of Columbia," but asserts nevertheless that it should be dismissed as a party because "it was not involved in the management of CFSA during the *LaShawn* receivership." We note that the court in the *Fantasia* case, in denying a motion by the plaintiffs to add the District of Columbia as a defendant, held that "an entity placed in receivership cannot be held directly or vicariously liable for the wrongful acts of a receiver, because such an entity is controlled by the receiver and as a matter of law lacks discretion to disobey his or her orders." *Fantasia v. Office of the Receiver of the Commission on Mental Health Services*, 2002 WL 32934137, 2002 U.S. Dist. Lexis 27609 at *10 (D.D.C. March 11, 2002).

In other circumstances we might consider the denial of a separate claim by the District of Columbia of immunity from suit as an appealable collateral order. In this case, however, it is clear from the record that any claim against the District of Columbia is entirely dependent on, and derivative of, the claims against the individual defendants and the CFSA. Indeed, the second amended complaint, although it names "The District of Columbia, et al.," in the caption as defendants, lists only the CFSA, the five named individual defendants, and Del Amo Hospital as defendants in the body of the complaint. Because any potential liability of the District would thus be entirely vicarious, and because the second amended complaint contains no separate claim against the District independent of the claims against the individual defendants and the CFSA, we hold that we lack jurisdiction to decide in the present appeal whether the District may be held liable for any acts of the CFSA employees during the receivership.

 

may be sued in its own name. It also contends that the current CFSA director cannot be held liable for acts or omissions that occurred after the receivership ended. We are urged to decide these questions now because, the District maintains, a favorable decision from us can only mean that appellee has no viable claim against either the District or the current CFSA director and that these parties should therefore be dismissed as party defendants. The District concedes that these issues are not yet independently appealable, but contends that pendent appellate jurisdiction permits their resolution at this time.

We cannot agree. In considering whether the District may argue issues other than immunity on its appeal from the denial of its motion to dismiss, we find the answer in our case law to be unambiguously clear: appellate review will ultimately be available if the District meets with an adverse outcome at trial, but not until then.

> The jurisdiction of this court is not a discretionary matter; either we have jurisdiction or we do not.... "The fact that [an] issue ... is important, or even critical to the disposition of the case, is of no legal consequence in deciding the question of appellate jurisdiction."

*Stein*, 532 A.2d at 647, quoting *Cohen v. Owens & Co.*, 464 A.2d 904, 906 (D.C.1983); *accord, Bowie v. Nicholson*, 705 A.2d 290, 292 (1998); *Gant v. United States*, 467 A.2d 968, 970 (D.C.1983), *cert. denied*, 466 U.S. 952, 104 S.Ct. 2155, 80 L.Ed.2d 541 (1984). Consequently, "[r]esolution of the other issues which [appellant] presses upon us must wait until a final judgment is entered." *Stein*, 532 A.2d at 647 (footnote omitted).

IV

The trial court's denial of the District's motion to dismiss the complaint was correct, and accordingly it is

*Affirmed.*